BARNES *v*. DISTRICT OF COLUMBIA.

1. A municipal corporation in the exercise of its duties is a department of the State. Its powers may be large or small: they may be increased or diminished from time to time at the pleasure of the State, or the State may itself directly exercise in any locality all the powers usually conferred upon such a corporation. Such changes do not alter its fundamental character.

2. The statement that a municipality acts only through its agents does not mean that it so acts through subordinate agents only. It may act through its mayor or its common council, its superintendent of streets, or its board of public works.

3. Whether the persons thus acting are appointed by the governor or president, or are elected by the people, does not affect the question whether they are or are not parts of the corporation and its agents. Nor is it important, on that question, from what source they receive their compensation.

4. The act of Congress of Feb. 21, 1871 (16 Stat. 419), creates a "municipal corporation" called "The District of Columbia." It provides for the appointment of an executive officer called a governor, and for a legislative assembly. It creates a board of public works, which is invested with the entire control of the streets of the District, their regulation and repair; and is composed of the governor of the District and four other persons appointed by the President of the United States, by and with the advice and consent of the Senate, to hold their offices for the term of four years, unless sooner removed by the President. The board is empowered to disburse all moneys appropriated by Congress or the District, or collected from property-holders in pursuance of law, for the improvement of streets, avenues, &c.; and is required to make a report to the legislative assembly of the District, and to the governor, who is directed to lay the same before the President for transmission to Congress. *Held*, that the board of public works is not an independent body acting for itself, but is a part of the municipal corporation; and that the District of Columbia is responsible to an individual who has suffered injury from the defective and negligent condition of its streets. *Held further*, that a municipal corporation, holding a voluntary charter as a city or village, is responsible for its mere negligence in the care and man-

agement of its streets. In this respect, there is a distinction between the liability of such a corporation and that of a *quasi* corporation like a county, town, or district. Whether or not this distinction is founded on sound principle, it is too well settled to be disturbed.

ERROR to the Supreme Court of the District of Columbia.

This is an action to recover damages for a personal injury received by the plaintiff on the 14th of October, 1871, in consequence of the defective condition of one of the streets of the city of Washington. The accident occurred on K Street east, and arose from the construction of the Baltimore and Potomac Railroad through that street. The road was built by permission of the corporation, and authority was given to the company to change the grade of the streets according to a plan filed. In making this change, a deep pit or excavation was made, into which the plaintiff fell. The questions touching the plaintiff's injury, the defective condition of the street, and the negligence of those having it in charge, were submitted to the jury, and the issue upon each of them was found in favor of the plaintiff. The verdict of the jury, by which they awarded to him the sum of three thousand five hundred dollars as damages, besides his costs, and the judgment thereon, were set aside at the general term of the Supreme Court of the District, and judgment was ordered in favor of the defendant. From this judgment the present writ of error was brought.

*Mr. Edwin L. Stanton* for the defendant in error.

The charter of the old corporation having been repealed by the act of Feb. 21, 1871, its ordinance granting permission to the railroad company to construct its road was irrelevant in this case, as the District of Columbia is not responsible for the acts of that corporation. The right to pass along the streets having, independently of the municipal ordinance, been granted by Congress to the company, it was obliged to conform to the grade of the streets, unless Congress authorized a different level. The District had no power whatever to act in the matter.

Whether this action is maintainable against the District of Columbia depends upon the terms and conditions of its charter. *Weightman* v. *The Corporation of Washington*, 1 Black, 50.

Prior to the passage of the act of Feb. 21, 1871, the corpora-

tion of the city of Washington had, under congressional enactments, full power and authority to open and keep in repair the streets, alleys, &c., agreeably to the plan of the city.; but this act intrusts no control whatever over the streets and avenues to the new corporation, but vests it in a Federal commission authorized to make all regulations which it might deem necessary for keeping them in repair. The act prescribed the powers of the board of public works as distinctly as it did those of other officers, and made it independent of the legislative assembly in respect to the authority committed to it by Congress.

That this entire control of the streets and avenues, with power to make all regulations which it should deem necessary for keeping the same in repair, was committed to the board of public works, not as a department or subordinate agency of the municipality called the District of Columbia, but as a Federal commission, is clearly shown by the legislation of Congress. Its members were appointed by the President of the United States, by and with the advice and consent of the Senate. The acts of May 8, 1872 (17 Stat. 74), and March 3, 1873 (id. 499, 500), and sect. 76 of the Revised Statutes relating to the District of Columbia, providing for the salaries of the members of the board of public works and other officers of the District, enact that no part of the sums thereby appropriated shall be paid to any member of such board "*who shall hold any other Federal office,*" or "who is paid a salary for the discharge of the duties of *any* other *Federal office, under the government of the United States.*"

The act of June 20, 1874 (18 Stat. 116), abolishing the office of governor, secretary, board of public works, delegate in Congress, and also the legislative assembly, distinguishes between the accounting officers, other officials, laborers, employés, and the indebtedness of the District, and those of the board of public works. This distinction is also made by the acts of Congress of June 10, 1872 (17 Stat. 350, 351), April 20, 1871 (id. 7), Jan. 8, 1873 (id. 405, 406), and June 23, 1874 (18 id. 210).

The conclusion is thus reached, that by the act of Feb. 21, 1871, the entire control over the streets and avenues, which are

the property of the United States, was given to a Federal commission, with exclusive power to make such regulations as it might deem necessary for keeping the same in repair.

Liability on the part of a municipal corporation for the neglect or omission of a corporate duty springs from the particular nature of the duty enjoined, and from the means given for its performance, which must be ample. The duty must relate to the local interests of the municipality, and be imperative, and not discretionary or judicial. *Weightman* v. *The Corporation of Washington*, 1 Black, 50; Dill. on Munic. Corp., sect. 765.

Here the duty was not enjoined, nor were the means given. Therefore the liability for injury resulting from neglect of duty, if it exists at all, must appear, upon a fair review of the charter or statutes, to rest upon the municipal corporation as such, and not upon it as an agency of the State, nor upon its officers as independent public officers. Dill. on Munic. Corp., sects. 772, 789; *Child* v. *City of Boston*, 4 Allen, 41; *Walcott* v. *Swampscott*, 1 id. 101; *Martin* v. *Mayor of Brooklyn*, 1 Hill, 550; *Detroit* v. *Blakely*, 21 Mich. 84; 9 Am. Law Reg. 680, n.

*Mr. W. D. Davidge* and *Mr. R. K. Elliot*, contra.

MR. JUSTICE HUNT delivered the opinion of the court.

The municipal corporation, " The District of Columbia," was organized under the act of Congress of Feb. 21, 1871. 16 Stat. 419.

The first section of the act creates a municipal corporation by the name of " The District of Columbia," with power to sue, be sued, contract, have a seal, and " exercise all other powers of a municipal corporation, not inconsistent with the laws and constitution of the United States and the provisions of this act."

By sect. 2 the executive power is vested in a governor, to be appointed by the President, with the consent of the Senate, and to hold his office for four years. Bills passed by the council, and house of delegates, were to be presented to him for approval or rejection.

A secretary of the District is also provided for, whose duties are specified. The legislative power in the District is vested in two bodies, — a council, and house of delegates, — called a legislative assembly; which power it was in the eighteenth section

declared should "extend to all rightful subjects of legislation within said District, consistent with the Constitution of the United States and the provisions of this act."

It is enacted that the President, with the consent of the Senate, shall appoint a board of health, consisting of five persons, whose duties are pointed out. The salaries of the governor and secretary are prescribed, and are to be paid "at the treasury of the United States." The salaries of the members of the legislative assembly are prescribed; but it is not declared where or how or by whom they shall be paid, unless they are included in the general terms of sect. 38.

By the thirty-seventh section it is provided that there shall be a "board of public works, to consist of the governor and four other persons to be appointed by the President, with the consent of the Senate, who shall have entire control of and make all regulations which they shall deem necessary for keeping in repair the streets, avenues, and alleys and sewers of the city, and all other works which may be intrusted to their charge by the legislative assembly or Congress." They are also required to disburse the money collected for such purposes, and to make an annual report of their proceedings to the legislative assembly, and to furnish a duplicate of the same to the governor.

The charters of the cities of Washington and Georgetown are declared to be repealed, except that they are continued in force for certain specified purposes not necessary to be here considered.

The statute creating this corporation, in its first section, declares it to be a body corporate, not only with power to contract, to sue and be sued, and to have a seal, but also that it is a body corporate for municipal purposes, and that it shall exercise all other powers of a municipal corporation, not inconsistent with the constitution and laws of the United States and the provisions of this act.

A municipal corporation, in the exercise of all of its duties, including those most strictly local or internal, is but a department of the State. The legislature may give it all the powers such a being is capable of receiving, making it a miniature State within its locality: Again : it may strip it of every power, leaving it a corporation in name only ; and it may create and

recreate these changes as often as it chooses, or it may itself exercise directly within the locality any or all the powers usually committed to a municipality. We do not regard its acts as sometimes those of an agency of the State, and at others those of a municipality; but that, its character and nature remaining at all times the same, it is great or small according as the legislature shall extend or contract the sphere of its action.

In his work on Municipal Corporations (sect. 835), Judge Dillon says, " As the highways of a State, including streets in cities, are under the paramount and primary control of the legislature, and as all municipal powers are derived from the legislature, it follows that the authority of municipalities over streets, and the uses to which they may be put, depends entirely upon their charter, or legislative enactments applicable to them. It is usual in this country for the legislature · to confer upon municipal corporations very extensive powers in respect to streets and public ways within their limits, and the uses to which they may be appropriated. The authority to open, care for, regulate, and improve streets, taken in connection with the other powers usually granted, give to municipal corporations all needed authority to keep the streets free from obstructions and to prevent improper uses, and to ordain ordinances to this end."

A corporation can act only by its agents or servants. This obvious truth does not imply that the acts must be done by inferior or subordinate agents, but, on the contrary, the higher the authority of the agent, the more evident is the responsibility of the principal. While a State may be represented in various ways, no one will doubt that its act, when declared through the means of its legislature or its governor within their respective spheres, is more emphatically obligatory upon it than when made known through its inferior departments.

A municipal corporation may act through its mayor, through its common council, or its legislative department by whatever name called, its superintendent of streets, commissioner of highways, or board of public works, provided the act is within the province committed to its charge. Nor can it in principle be of the slightest consequence by what means these several officers are placed in their position, — whether they are elected by

the people of the municipality, or appointed by the President or a governor. The people are the recognized source of all authority, state and municipal; and to this authority it must come at last, whether immediately or by a circuitous process.

An elected mayor or an appointed mayor derives his authority to act from the same source; to wit, that of the legislature. The whole municipal authority emanates from the legislature. Its legislative charter indicates its extent, and regulates the distribution of its powers as well as the manner of selecting and compensating its agents. The judges of the Supreme Court of a State may be appointed by the governor with the consent of the senate, or they may be elected by the people. But the powers and duties of the judges are not affected by the manner of their selection. The mayor of a city may be elected by the people, or he may be appointed by the governor with the consent of the senate; but the slightest reflection will show that the powers of this officer, his position as the chief agent and representative of the city, are the same under either mode of appointment. Whether his act in a case in question is the act of and binding on the city depends upon his powers under the charter to act for the city, and whether he has acted in pursuance of them, not at all upon the manner of his election. It is equally unimportant from what source he receives compensation, or whether he serves without it.

When the question is, whether an individual is acting for himself or for another, the inquiry whether that other directed him to do the work and controlled its performance, and whether he promised to pay him for his service, may be important in determining that question. In a case like the one before us, where all the actors are in some form under the same authority, where all are created by the same legislature, and it is a question of the distribution of conceded power, these suggestions are unimportant.

Nor are these by any means conclusive considerations in any case. A striking instance to the contrary is found in the case of *The China*, 7 Wall. 53. It is there held, that although the master of the vessel is bound to take a pilot on board his vessel, and bound to take the first one offering his services, the owners are responsible for a collision caused by the negligence of the pilot thus in charge of the vessel.

In the case of the municipal corporation before us, we have no doubt that the governor and the legislative department are equally representatives and agents of that body, unaffected by the circumstance that the one is appointed by the President and the others are elected by the people; or that the one is paid from one source, and the others from another source. They are severally members and parts of a municipal corporation, whose charter emanates from the Congress of the United States, and by which their powers and authority are conferred or defined.

Whether the board of public works is also a part of and an agency of the municipal corporation is the question before us.

1. The authorities state, and our own knowledge is to the effect, that the care and superintendence of streets, alleys, and highways, the regulation of grades, and the opening of new and closing of old streets, are peculiarly municipal duties. No other power can so wisely and judiciously control this subject as the authority of the immediate locality where the work is to be done. Accordingly, although complaints are often made of corruption and venality, as they are, indeed, of all public functionaries, and attempts made to substitute other agencies, the general judgment of the country has always accepted the municipal organization as the one subject to the least objection for the execution of this duty. In inquiring, therefore, where this power was vested in a particular case, we should expect to find that it was given to the municipality.

2. The act of Congress of Feb. 21, 1871, is entitled "An Act to provide a government for the District of Columbia," and its intention is to accomplish that end by the means of a municipal corporation called "The District of Columbia." The powers given to it are to contract, sue and be sued, to have a seal, and all other powers of a municipal corporation, not inconsistent with the constitution and laws of the United States or the provisions of this act. The powers thus given are to be exercised by the means and agencies in the act specified; and, unless these means and agencies do represent the corporation, it has nothing, and does nothing. It is a nonentity. The first of these is the existence of a governor, who is invested with the executive power in and over the District of Columbia. This

office is a large type of a mayoralty; and his acts or declarations, or notices or services upon him, within the sphere of executive authority, are those of or upon the municipal corporation.

The legislative assembly also is a large edition of a common council, and is the especial power and organ of the municipality in regulating its ordinary business and affairs.

The thirty-seventh section defines and locates the power to regulate and repair the streets and highways of the District of Columbia. The persons there referred to are invested with the entire control of the streets, their regulation and repair. It is declared that there shall be "a board of public works," of whom the chief agent of the city corporation — viz., the governor — shall be one, and four other persons to be nominated by the President; and to this board is given the power specified. The full text of the section is as follows : —

### BOARD OF PUBLIC WORKS.

"SECT. 37. *And be it further enacted,* That there shall be in the District of Columbia a board of public works, to consist of the governor, who shall be president of said board ; four persons, to be appointed by the President of the United States, by and with the advice and consent of the Senate, one of whom shall be a civil engineer, and the others citizens and residents of the District, having the qualifications of an elector therein. One of said board shall be a citizen and resident of Georgetown, and one of said board shall be a citizen and resident of the county outside of the cities of Washington and Georgetown. They shall hold office for the term of four years, unless sooner removed by the President of the United States. The board of public works shall have entire control of and make all regulations which they shall deem necessary for keeping in repair the streets, avenues, alleys, and sewers of the city, and all other works which may be intrusted to their charge by the legislative assembly or Congress.

They shall disburse upon their warrant all moneys appropriated by the United States or the District of Columbia, or collected from property-holders in pursuance of law, for the improvement of streets, avenues, alleys and sewers, and roads and bridges ; and shall assess, in such manner as shall be prescribed by law, upon the property adjoining and to be specially benefited by the improvements authorized by law and made by them, a reasonable proportion of

the cost of the improvement, not exceeding one-third of such cost, which sum shall be collected as all other taxes are collected.

" They shall make all necessary regulations · respecting the construction of private buildings in the District of Columbia, subject to the supervision of the legislative assembly.

" All contracts made by the said board of public works shall be in writing, and shall be signed by the parties making the same, and a copy thereof shall be filed in the office of the secretary of the District; and said board of public works shall have no power to make contracts to bind said District to the payment of any sums of money except in pursuance of appropriations made by law, and not until such appropriations shall have been made. All contracts made by said board, in which any member of said board shall be personally interested, shall be void ; and no payment shall be made thereon by said District, or any officers thereof. On or before the first Monday in November of each year, they shall submit to each branch of the legislative assembly a report of their transactions during the preceding year, and also furnish duplicates of the same to the governor, to be by him laid before the President of the United States for transmission to the two Houses of Congress ; and shall be paid the sum of two thousand five hundred dollars each annually."

1. The four persons composing this board are nominated by the President, and hold their offices for a fixed period of time. They cannot be removed except by the President of the United States. The same thing is true of the governor and of the secretary of the District; except that, as to them, there is no power of removal. Each is appointed in the same manner, and holds until the expiration of his term and until his successor is qualified. The same is true, also, of the members of the council, except that their term is of shorter duration. It is true, also, in relation to the house of delegates, except that they are elected by the people, and hold their offices for a fixed term of one year. We have already endeavored to show that it is quite immaterial, on the question whether this board is a municipal agency, from what source the power comes to these officers, — whether by appointment of the President, or by the legislative assembly, or by election.

2. This board is invested with the entire control and regulation of the repair of streets and alleys, and all other works which may be intrusted to their charge by the legislative as-

sembly or Congress. They shall disburse all the money appropriated by the legislative assembly or by Congress, or collected from property-holders for the improvement of streets and alleys.

It is to be noticed here, that the municipal corporation, as represented by the legislative assembly, may impose upon this board such other duties as they think proper. The board is to perform "all other work intrusted to their charge by the legislative assembly or Congress." In this respect, certainly, it is not an independent body. It is subject to two masters, either of whom may impose upon it any other work it may choose, and which work it is bound to perform. Its dependence upon Congress and upon the legislative assembly in this respect rests upon the same basis. It will not be claimed by any one that it is not subject to the control of Congress, and dependent upon that body.

3. The board shall disburse all moneys appropriated by the United States or the District of Columbia, or collected from property-holders, for improvements of streets or alleys. In doing the two acts here first specified, the board again acts as the hand and agent of the United States or of the District, as the case may be.

4. On or before the first Monday of each year, the board is required to make a report of their transactions during the preceding year to each branch of the legislative assembly, and also to the President, to be placed before Congress by him. This duty is also an indication of their subordination equally to Congress and to the legislative assembly. The powers given to this board are not of a character belonging to independent officers, but rather those which indicate that it is the representative of the municipal corporation.

Notwithstanding these features, and notwithstanding we find this power given by the act which creates the municipality, and that this is one of the powers ordinarily belonging to a municipal government, and although the manner of its bestowal and the selection of the agents who exercise it are similar to that of the other appointees and agents of the municipal corporation, it is still contended that no liability exists on the part of the corporation to compensate the plaintiff for his injuries.

It is denied that a municipal corporation (as distinguished from a corporation organized for private gain) is liable for the injury to an individual arising from negligence in the construction of a work authorized by it. Some cases hold that the adoption of a plan of such a work is a judicial act; and, if injury arises from the mere execution of that plan, no liability exists. *Child* v. *City of Boston*, 4 Allen, 41; *Thayer* v. *Boston*, '19 Pick. 511. Other cases hold that for its negligent execution of a plan good in itself, or for mere negligence in the care of its streets or other works, a municipal corporation cannot be charged. *City of Detroit* v. *Blackely*, 21 Mich. 84, is of the latter class, where it was held that the city was not liable for an injury arising from its neglect to keep its sidewalks in repair.

The authorities establishing the contrary doctrine that a city is responsible for its mere negligence, are so numerous and so well considered, that the law must be deemed to be settled in accordance with them. *English Authorities.* — *Mayor* v. *Henley*, 2 Cl. & Fin. 331; *Mersey Docks* v. *Gibbs*; *Same* v. *Penhallow*, 1 H. Ld. Cas. N. s. 93; 1 H. & N. 439; *Lan. Canal Co.* v. *Parnably*, 11 Ad. & Ell. 223; *Scott* v. *Mayor*, 37 Eng. Law & Eq. 465. *United States Authorities.* — *Weightman* v. *Washington*, 1 Bl. 39; *Nebraska* v. *Campbell*, 2 id. 590; *Robbins* v. *Chicago*, 4 Wall. 658; *Supervisors* v. *U. S.*, id. 435; *Mayor* v. *Sheffield*, id. 194. *New York.* — *Davenport* v. *Ruckman*, 37 N. Y. 568; *Requa* v. *Rochester*, 45 id. 129; *Rochester W. L. Co.* v. *Rochester*, 3 id. 463; *Conrad* v. *Ithaca*, 16 id. 158; *Barton* v. *Syracuse*, 36 id. 54. *Illinois.* — *Browning* v. *City of Springfield*, 17 Ill. 143; *Claybury* v. *City of Chicago*, 25 id. 535; *City of Springfield* v. *Le Claire*, 49 id. 476. *Alabama.* — *Smoot* v. *Mayor of Wecumpka*, 24 Ala. N. s. 112. *Connecticut.* — *Jones* v. *City of New Haven*, 34 Conn. 1. *North Carolina.* — *Meares* v. *Wilmington*, 9 Ired. 73. *Maryland.* — *County Commissioners of Anne Arundel County* v. *Duckett*, 20 Md. 468. *Pennsylvania.* — *Pittsburg City* v. *Grier*, 22 Penn. 54; *Erie City* v. *Schwingle*, id. 388. *Wisconsin.* — *Cook* v. *City of Milwaukee*, 24 Wis. 270; *Ward* v. *Jefferson*, id. 342. *Virginia.* — *Sawyer* v. *Corse*, 17 Gratt. 241; *City of Richmond* v. *Long*, id. 375. *Ohio.* — *Western College* v. *Cleveland*, 12 Ohio, N. s. 377; *McCombs* v. *Akron*, 15 id. 476; *Rhodes* v. *Cleveland*, 10 id. 159.

And here a distinction is to be noted between the liability of a municipal corporation, made such by acceptance of a village or city charter, and the involuntary *quasi* corporations known as counties, towns, school-districts, and especially the townships of New England. The liability of the former is greater than that of the latter, even when invested with corporate capacity and the power of taxation. 1 Dillon, sects. 10, 11, 13; 2 id. sect. 761.

The latter are auxiliaries of the State merely, and, when corporations, are of the very lowest grade, and invested with the smallest amount of power. Accordingly, in *Conrad* v. *Ithaca*, 16 N. Y. 158, the village was held to be liable for the negligence of their trustees; while in *Weet* v. *Brockport* the town was said not to be liable for the same acts by their commissioners of highways. Id. 163, 4, 9. See Brooke's Abridgment, " Action on the Case; " *Russell* v. *Men of Devon*, 2 T. R. 308, and cases there cited; 16 N. Y., *supra*.

Whether this distinction is based upon sound principle or not, it is so well settled that it cannot be disturbed. Decisions or analogies derived from this source are of little value in fixing the liability of a city or a village. See Dillon, *supra*.

Again: it is contended that the board of public works of the District of Columbia is an independent body, acting for itself, not forming a part of the corporation, and that the corporation is not responsible for its acts. We have analyzed the power of this body in a previous part of this opinion, and have set out in full the language of the thirty-seventh section.

Upon this point, also, we are able to derive assistance from the adjudged cases.

The case of *Bailey* v. *Mayor*, in the Supreme Court of New York, 3 Hill, 531, and again in the Court of Errors, 2 Den. 431, is a leading authority upon this question. In the year 1834, the legislature of the State of New York passed an act " to provide for supplying the city of New York with pure and wholesome water." Sess. Laws 1834, p. 531. The act provided that the governor should appoint five persons, to be known as water commissioners, whose duty it was made to examine all matters relative to that subject (sect. 2); to employ such engineers as they should deem necessary (sect. 3); to adopt such

plan as they should deem most advantageous for procuring such supply of water; to ascertain the amount of money needed for the purpose; and to make conditional contracts for the purchase of lands required, subject to the ratification of the common council of New York (sect. 4). The plan, the estimate of the expense, the conditional contracts, and all other matters connected therewith, were to be presented by the commissioners to the common council of New York (sects. 5, 6), who were directed to submit the plan to the electors of New York for their rejection or approval (sect. 7). If approved, the council were to direct the commissioners to proceed with the work; and the council was authorized to raise by loan $2,500,000, which money was to be applied to the purposes of the act "by or under the direction of the commissioners" (sect. 11). The commissioners were authorized to enter upon lands, agree for their purchase or take measures for their condemnation (sects. 12–14), and to use the ground or soil under any street or highway within the State for the purpose of introducing the water (sect. 15). The commissioners were authorized to draw on the city comptroller for all sums due for the purchase of lands, and sums due to contractors, and for their own incidental expenses; and the payments were required to be reported to the council once in every six months.

Under this statute a plan was prepared and approved by the citizens of New York, money was raised, and the work was entered upon. It was proved that the commissioners entered into a contract with Crandall & Van Zandt for building a dam across the Croton River, which was about forty miles from the city of New York, and in another county, in pursuance of the plan adopted. The plaintiff offered also to prove that it was so negligently and carelessly constructed, that upon the occurrence of a freshet in 1841 it was swept away, and the property of the plaintiff, real and personal, situate on both sides of the river below the dam, was destroyed to the value of $60,000. The circuit judge rejected the evidence, and directed the plaintiff to be nonsuited. The case was carried to the Supreme Court, where the nonsuit was set aside. The judgment was delivered by Nelson, C. J., whose opinion opens in these words: "The principal ground taken at the circuit against this action, and

the one upon which it was understood the cause there turned, was that the defendants were not chargeable for negligence or unskilfulness in the construction of the dam in question, inasmuch as the water commissioners were not appointed by them, nor subject to their direction or control." The learned judge repudiates the argument arising from the fact that the commissioners were appointed by the State; that the defendants had no control over their actions; that they were bound to employ them, and submit to the independent exercise of their control. He held that the commissioners were the agents of the city, and that the latter was responsible for their negligent conduct.

The case was then carried to the Court of Errors of the State of New York, 2 Den. 433, where the judgment of the Supreme Court was affirmed. Chancellor Walworth bases his opinion of affirmance chiefly upon the fact that the city was the owner of the land on which the dam was built, and therefore liable for the negligent conduct of those who built it. Senators Hand, Bockee, and Barlow base their judgments of affirmance on the ground that the commissioners were the agents of the city. Gardner, lieutenant-governor, delivered an able dissenting opinion.

This case is nearer to the one we are considering than any other reported in the books. The struggle in the New York courts was between the dictates of that evident justice and good sense which required that the city should indemnify a sufferer for the loss arising from the acts of those doing a work under its authority and for its benefit, and the technical rule which exempted it from liability for acts of officers not under its control or appointed by it.

If these courts had had before them the additional facts which exist in this case, — to wit, that, in the very statute which made the city of New York a municipal corporation, these persons had been appointed to do every thing necessary to be done respecting the care and improvement of the streets, being invested with their exclusive control; that without that body, and two other equally independent bodies (to wit, the mayor and the legislative assembly, neither of them being declared in words to be part of the municipal body), the municipal corporation had no one part of an organized existence, — we think they

would have arrived at the same conclusion, but would have found less difficulty in choosing a ground on which to place their judgment.

In the case before us, we think that Congress intended to make the board of public works a portion of the municipal corporation. The governor, or mayor, as he would ordinarily be called, represented the executive department; the legislative assembly, like a common council, had the exclusive authority to pass all laws or ordinances upon the large class of subjects committed to its charge, with certain specified restrictions; and to the board of public works, like an ordinary agent of the corporation, was given the exclusive control of the streets and alleys. Names are not things. Perhaps there is no restriction on the power of Congress to create a State within the limits of the District of Columbia; but it does not make an organization a State to call its mayor a governor, or its common council a legislative assembly, or its superintendent of streets a board of public works, especially when the statute by which they are created opens with a declaration of its intention to create a municipal corporation. We take the body thus organized to be a municipal corporation, and that its parts are composed of the members referred to; and we hold, therefore, that the proceedings by that body, in the repair and improvement of the street out of which the accident in question arose, are the proceedings of the municipal corporation. That in such case the corporation is responsible, we have already cited the authorities to show.

No doubt there are authorities holding views not in all respects in harmony with those we have expressed. Among these are *Thayer* v. *Boston*, 19 Pick. 510; *Walcott* v. *Swampscott*, 1 Allen, 101; *Child* v. *City of Boston*, 4 id. 41. The first of these cases holds that a city corporation is liable in tort, provided the act is done by the authority and order of the city government, or those branches of the government invested with authority to act for the corporation; but that it must appear that the act was done by the express authority of the city, or *bona fide* in pursuance of a general authority on the subject. To this we assent. *Walcott* v. *Swampscott* was an action against a town. The surveyor of highways employed one O'Grady to drive a horse and cart with a load of gravel for the repair of a highway;

and, while thus engaged, he came in collision with the plaintiff. The town was held not to be liable, on the theory that the surveyor was not an agent or servant of the town, but an independent officer appointed to perform a public duty in which the town had no interest. In *Child* v. *City of Boston* it was held that the city was not responsible for any deficiency in the plan of drainage adopted by the city, although the plaintiff was injured thereby; that the duty in this respect was of a *quasi* judicial nature, involving discretion, and depending upon public considerations; that in this they acted, not as agents of the city, but as public officers. In this respect the case is in hostility to *Roch. White Lead Co.* v. *Rochester*, 3 N. Y. 463, where the city was held liable because it constructed a sewer which was not of sufficient capacity to carry off the water draining into it. The work was well done; but the adoption and carrying out of the plan was held to be an act of negligence. The Boston case, however, holds, that if a sewer, originally well constructed, becomes defective by reason of low lands being filled up so that the outflow is obstructed, it is the duty of the city so to extend the sewer that its efficiency shall be restored, and that for a failure to do so it becomes liable to those whose property is injured by the overflow of the sewer. In its practical results, this is one of the strongest cases to be found in favor of municipal liability.

We do not perceive that the circumstance that the fee of the streets is in the United States, and not in the municipal corporation, is material to the case. In most of the cities of this country, the fee of the land belongs to the adjacent owner; and, upon the discontinuance of the street, the possession would revert to him. The streets and avenues in Washington have been laid out and opened by competent authority. The power and the duty to repair them are undoubted, and would not be different were the streets the absolute property of the corporation. The only questions can be as to the particular person or body by which the power shall be exercised, and how far the liability of the city extends.

*The judgment of the General Term is reversed, and the case is remanded to the Supreme Court of the District of Columbia, with directions to affirm the judgment of the Special Term upon the verdict.*

MR. JUSTICE FIELD, with whom concurred MR. JUSTICE BRADLEY, dissenting.

I dissent from the judgment in this case. I do not think the District of Columbia should be held responsible for the neglect and omissions of officers whom it has no power to select or control.

MR. JUSTICE SWAYNE and MR. JUSTICE STRONG dissented.