## ALBERT F. ENGEL v. CITY OF MINNEAPOLIS.[1]

### December 7, 1917.

### No. 20,587.

**Municipal corporation — notice of defect in street.**

Under the charter of Minneapolis, the mayor has control and supervision of the police department and is empowered to make rules for the government of the department. Among such rules, in force 30 years, is one requiring policemen to note all defects in streets from which accidents may occur and report the same to the officer commanding his precinct and requiring such officer to make a record thereof. For this period such defects have been reported by the police department to the officer of the city charged with the duty of making repairs, and the police have been furnished with lights to guard defective places at night until repair could be made. *Held*, that notice to the officer in charge of a police precinct of a defect in a street is actual notice to the city.

Action in the district court for Hennepin county to recover $40,000 for injuries received in riding over an obstruction in one of defendant's streets. The answer alleged contributory negligence on the part of plaintiff. The case was tried before Leary, J., and a jury which returned a verdict in favor of defendant. From an order denying plaintiff's motion for a new trial, he appealed. Reversed.

*Brady, Robertson & Bonner,* for appellant.

*Charles D. Gould* and *W. G. Compton,* for respondent.

[1]Reported in 165 N. W. 278.

HALLAM, J.

About 9:30 p. m. on July 1, 1916, plaintiff was riding in a grocery wagon along Broadway in Minneapolis. He was sitting on the bottom of the wagon box. Broadway is paved with concrete. At one point in the street the concrete had shortly before become raised or "buckled up," making an obstruction of the height of 12 or 14 inches. As the wagon struck this obstruction plaintiff was thrown out and injured. The defect in the street was a serious one. It had not existed long and had probably been caused by expansion due to the heat. The defect was, however, reported to the police officer in charge of the East Side police station as early as 4 o'clock on that afternoon. The court instructed the jury that this was not actual notice to the city. Under this instruction the jury found for defendant. Plaintiff appeals. The correctness of this instruction is the question on this appeal.

In our opinion the instruction was erroneous. The rule is reasonably well settled that notice of a defect in a street to an officer or agent of the city is notice to the city if such officer is charged with the duty of repairing such defect or reporting it to another officer or department who does make repairs. City of Macon v. Morris, 10 Ga. App. 298, 73 S. E. 539; Cummings v. City of Hartford, 70 Conn. 115, 38 Atl. 916; City of Columbus v. Ogletree, 102 Ga. 293; 29 S. E. 749; City of Louisville v. Lenehan, 149 Ky. 537, 149 S. W. 932, Ann. Cas. 1914B, 164; City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518; City of Cleveland v. Payne, 72 Oh. St. 347, 74 N. E. 177, 70 L. R. A. 841.

For more than 30 years, with the exception of an interval from 1887 to 1891, when the power was vested in a police commission by chapter 9, p. 422, Sp. Laws of 1887, the charter of Minneapolis has vested the mayor with "control and supervision of the police of the city" and with power to "make all needful rules and regulations for the efficiency and discipline and promulgate and enforce general and special orders for the government of the same." Sp. Laws 1881, p. 454, c. 76, subc. 6, § 1; Sp. Laws 1891, p. 768, c. 135 [c. 6, § 1].

Since 1887 there has existed a set of rules originally promulgated by the police commission and ever since issued by the mayor. These rules with slight change from time to time have contained these provisions:

Rule 12 provides that every patrolman while on duty "shall note all

street and sidewalk obstructions; all defects therein from which accidents may occur, removing them when practicable * * * all nuisances and all other matters affecting the safety * * * of the public * * *; and shall make report thereof without delay, in writing, to the officer commanding his precinct."

Rule 8 provides that the captains of the various stations "shall keep for reference a daily record of * * * dangerous places and accidents * * * and all other matter appertaining to the business of the department in his precinct."

The evidence is undisputed that a copy of these rules has, during all the period mentioned, been given to every policeman, and that the rules quoted have been observed as rules of the department.

It has further been the custom of the police department during all these years to report any defect in a street or sidewalk to the officer of the city charged with the duty of making proper repairs, and the different stations have been furnished with red lights with which to guard dangerous places at night until repair could be made.

If the mayor was authorized to make these rules, it is clear that they constitute a police officer a proper officer to receive notice on behalf of the city. But it is contended that the mayor had no such authority. This contention is based largely on the fact that the city charter gives to the city council the care, supervision and control of all highways and streets within the city (city charter, c. 8, § 1), and that the city council has never vested the mayor with any authority concerning streets, and has never required of the police force the discharge of any duty in connection therewith. There is some authority for the proposition that such duties can be imposed upon the police only by ordinance of the city council. City of Cleveland v. Payne, 72 Oh. St. 347, 74 N. E. 177, 70 L. R. A. 841.

We cannot follow this rule. This court has held that notice to the mayor of a defect in a street is notice to the city, because of the general powers and duties of the mayor as chief magistrate of the city. Cunningham v. City of Thief River Falls, 84 Minn. 21, 86 N. W. 763. This may not be very important in this case except as it indicates that notice may be good though not given to one charged by the council with any duty respecting streets. The city policeman was not known to the early com-

mon law. He is a creature of statute. His duties are in the main defined by statute or ordinance. The duties that he actually performs have been enlarged somewhat by custom and also by rules and regulations of his department which are not in any sense statutes. As modern cities are constituted and managed, it is important that there be some quick and ready means of discovering defects in streets and some one in authority to whom such defects may be expeditiously reported. This seems to be a very appropriate function to impose on the police department, and we are of the opinion that the mayor as chief magistrate of the city, having "control and supervision of its police force" may very properly be regarded as vested with power to impose this duty upon the police by rules and regulations looking to that end. In fact, where, as in this case, such rules have been in force and have been notoriously acted upon for 30 years, they must be deemed to have the sanction and approval of every branch of the city government.

We hold that notice of this defect to the police officer in charge of the East Side station was actual notice to the city. The authorities on the subject are meager, but we think the weight of authority sustains this position. City of Joliet v. Looney, 159 Ill. 471, 42 N. E. 854; Lundon v. City of Chicago, 83 Ill. App. 208; City of Woodward v. Bowder, 46 Okl. 505, 149 Pac. 138; Rehberg v. City of New York, 91 N. Y. 137, 43 Am. Rep. 657; Willis v. City of St. Joseph, 184 Mo. App. 428, 171 S. W. 27.

Whether the city was negligent in not guarding or earlier repairing the defect is not here determined. Much of the evidence bearing upon that question was excluded.

Order reversed.