GLADYS KELLEY AND LAWRENCE KELLEY, HER HUS-
BAND, PLAINTIFFS-APPELLANTS, v. JOHN CURTISS
AND THE CITY OF NEWARK, A MUNICIPAL CORPORA-
TION OF THE STATE OF NEW JERSEY, DEFENDANTS-
RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 23, 1953—Decided January 18, 1954.

292

Before Judges CLAPP, GOLDMANN and EWART.

*Mr. John A. Laird* argued the cause for plaintiffs-appellants (*Messrs. Greenstone & Greenstone*, attorneys).

*Mr. Vincent P. Torppey* argued the cause for defendant-respondent, City of Newark (*Mr. Horace S. Bellfatto*, attorney).

The opinion of the court was delivered by

CLAPP, S. J. A. D. This case, laying before us some fundamental questions on municipal liability for torts, was dismissed as against the defendant, City of Newark, at the close of plaintiffs' case. Plaintiffs appeal.

The plaintiff, Mrs. Gladys Kelley, was kicked by a horse which was tethered, and unattended, in a driveway, perhaps 35 feet in width, leading to a private auto parking lot. The horse, owned by the city and assigned to Officer Curtiss of the mounted police, had, for 20 minutes to an hour, daily, for over a year, been left by him there in this fashion. For over a year too, Mrs. Kelley had been parking her car there daily and, with Curtiss' knowledge, been feeding the horse sugar or candy three or four times a week. She had just done this when she was kicked.

Five months before, the horse while tethered in the lot, and unattended, had kicked another passerby (we of course, on a motion to dismiss, are concerned with those inferences from the evidence, which favor the plaintiff). Of this incident the passerby made a report to the police, and a transcript thereof formally drawn by an officer and bearing a lieutenant's signature, is in evidence. More important, Curtiss made out his own report of the incident to the police inspector, to whom he made all his reports. Whether these reports of his reveal his practice of parking the horse there unattended, we do not know.

Plaintiffs' entire position is this. A municipality will be held for tortious conduct in a governmental function, in two situations only: first, where the conduct is not punishable by indictment; or second, where, even if so punishable, it constitutes active wrongdoing. Here, plaintiffs say, you are faced with both situations.

The first branch of this thesis may—if you look back for the origin of it—be laid to some remarks of Chief Justice Beasley uttered in his forceful manner in *Jersey City v. Kiernan*, 50 *N. J. L.* 246 (*Sup. Ct.* 1888). He seems to have founded his decision there upon the proposition that civil relief should be afforded whenever "an indictment will

not lie"—that is, whenever the breach of duty is altogether private in character; for otherwise, he says, the one "damnified is remediless." However, he confined what he had to say, to a private nuisance. For a comprehensive and illuminating discussion of other phases of the point, indeed of this whole matter, see Joseph Weintraub and Milton B. Conford, *Tort Liability of Municipalities in New Jersey*, 3 *Mercer Beasley L. Rev.* 142 (1934).

The only decision which seems to push this broad proposition of the Chief Justice to the full reach of its logic into the field of negligence is *Olesiewicz v. Camden*, 100 *N. J. L.* 336 (*E. & A.* 1924), the case on which plaintiffs rely. However, doubt was thrown upon the case in certain respects by *Allas v. Rumson*, 115 *N. J. L.* 593, 599 (*E. & A.* 1935).

Other cases which rely upon the *Kiernan* case have to do with nuisances or wrongs arising from a use of real property, or of a building thereon or sewers which may be said to be a part thereof. *Waters v. Newark*, 56 *N. J. L.* 361 (*Sup. Ct.* 1894), affirmed 57 *N. J. L.* 456 (*E. & A.* 1894); *Hart v. Board of Freeholders of Union*, 57 *N. J. L.* 90 (*Sup. Ct.* 1894); *Murphy v. Borough of Atlantic Highlands*, 77 *N. J. L.* 452 (*Sup. Ct.* 1909); *Bisbing v. Asbury Park*, 80 *N. J. L.* 416 (*E. & A.* 1910); *Caruso v. Town of Montclair*, 88 *N. J. L.* 405 (*Sup. Ct.* 1916), affirmed 90 *N. J. L.* 255 (*E. & A.* 1917); *Buckalew v. Board of Chosen Freeholders of Middlesex*, 91 *N. J. L.* 517 (*E. & A.* 1918); *Johnson v. Board of Ed., Wildwood*, 102 *N. J. L.* 606, 611 (*E. & A.* 1926); *Allas v. Rumson*, 115 *N. J. L.* 593 (*E. & A.* 1935), *supra*; *Bengivenga v. Plainfield*, 128 *N. J. L.* 418 (*E. & A.* 1942); *cf. Casey v. Bridgewater Twp.*, 107 *N. J. L.* 163 (*E. & A.* 1930).

At any event, any endeavor to apply the *Kiernan* doctrine to a matter of negligence, as distinguished from one of nuisance, can hardly be sustained at this day. Indeed, the very decisions upon which the plaintiffs rest their claim on the second branch of the case, destroy the first branch of it. *Kress v. City of Newark*, 8 *N. J.* 562, 573 (1952); *Milstrey v. Hackensack*, 6 *N. J.* 400, 408 (1951). These

decisions hold a municipality accountable for negligence in connection with a public duty, only in a case of active wrongdoing directed or participated in by the municipality. See, too, *Lydecker v. Board of Chosen Freeholders of Passaic*, 91 *N. J. L.* 622, 628 (*E. & A.* 1918), stating, as to negligence, that "the common-law of liability is confined to active wrongdoing"; and *Ansbro v. Wallace*, 100 *N. J. L.* 391, 393 (*E. & A.* 1924), holding active wrongdoing to be the "only" exception to the rule of municipal immunity with respect to negligence. It makes no difference in a matter of negligence that the injury is not of a public character. The *Kress* case was one of private injury; it clearly could not be said there (as was said in *Johnson v. Board of Ed., Wildwood*, 102 *N. J. L.* 606, 611 (*E. & A.* 1926), *supra*) that "any member of the public might be injured."

There may still be with us a remnant of the *Kiernan* doctrine (illogically confined to the facts of that case), namely, in a situation where a private nuisance arises out of a nonfeasance of which the municipality has notice; but we need not deal with that. It is not clear as to what constitutes a nuisance. 4 *Restatement, Torts* 216; *Prosser, Torts* 549, 1074 (1941). But it is clear, at all events, that there is none here. So the first branch of plaintiffs' thesis falls.

The second part of the thesis calls for proof of active wrongdoing, directed or participated in by the municipality. *Kress v. City of Newark*, 8 *N. J.* 562 (1952), *supra*. Subdividing the matter, so as to look at it closely, we are brought to these fields of inquiry: was there wrongdoing, was it of an active sort, and was it directed or participated in by the municipality?

■ On this first question we are referred to *Healey v. P. Ballantine & Sons*, 66 *N. J. L.* 339 (*Sup. Ct.* 1901). There a horse, which kicked the plaintiff, was being led along a sidewalk. Quoting words from 1 *Beven, Negligence* 97, the court held that if the horse was "where it should not be," the case could not be nonsuited, because "kicking is not so far remote from what is to be expected from the natural disposition of horses." Further, the court sustained a charge:

"that even a kind and gentle horse will on occasion kick. Now, having that in view * * * did the stableman act negligently and carelessly in leading the horse along the sidewalk."

It was unnecessary, the court added, for the plaintiff to prove either the propensities of the animal to kick or the matter of *scienter*. *Kastner v. Weinstein*, 107 *N. J. L.* 254 (*E. & A.* 1931); *Pincus v. Sublett*, 26 *N. J. Super.* 188 (*App. Div.* 1953); *Restatement of Torts* § 518; but *cf.* *Barnett v. Pulda*, 116 *N. J. L.* 141 (*E. & A.* 1936). We think it was for the jury to determine whether a horse standing in this driveway to a private auto parking lot, was "where it should not be," and whether, therefore, the leaving of it there, tethered, but without anyone to hold its bridle, amounted to wrongdoing.

But was this wrongdoing active? It must be taken as settled now that a "negligent act of commission" is active wrongdoing. *Milstrey v. Hackensack*, 6 *N. J.* 400, 408 (1950), *supra; Florio v. Jersey City*, 101 *N. J. L.* 535, 540 (*E. & A.* 1925). Defendant overlooks this. It may be helpful to observe that the assertion found many times in the cases that "negligence in the performance" of a public duty is not actionable, must now be taken as overruled. *Waters v. Newark*, 56 *N. J. L.* 361 (*Sup. Ct.* 1894), affirmed 57 *N. J. L.* 456 (*E. & A.* 1894), *supra; Lydecker v. Board of Chosen Freeholders of Passaic*, 91 *N. J. L.* 622 (*E. & A.* 1917), *supra; Ansbro v. Wallace*, 100 *N. J. L.* 391 (*E. & A.* 1924), *supra; Kuchler v. New Jersey & N. Y. R. R. Co.*, 104 *N. J. L.* 333 (*E. & A.* 1928); *Callan v. Passaic*, 104 *N. J. L.* 643 (*E. & A.* 1928).

To be active, there must be a "positive, affirmative act." *Allas v. Rumson*, 115 *N. J. L.* 593, 595 (*E. & A.* 1935), *supra*. In other words, in the sequence of events each of which becomes a proximate cause of the injury, there must be a wrongful act (as distinguished from a mere failure to act) on the part of some municipal officer, agent or servant. The last event in that sequence may be non-action; but that does not render the prior act immune. See the cases where there is a failure to put up lights or barriers, after the

making of an obstruction, excavation or other nuisance in a road: *Cochran v. Public Service Electric Co.*, 97 *N. J. L.* 480 (*E. & A.* 1922); *Hammond v. County of Monmouth*, 117 *N. J. L.* 11 (*Sup. Ct.* 1936); *Reardon v. Wanaque*, 132 *N. J. L.* 536 (*Sup. Ct.* 1945). In *Boyle v. County of Hudson*, 8 *N. J.* 294 (1951), *Truhlar v. Borough of East Paterson*, 4 *N. J.* 490 (1950), and *Meyer v. Board of Education of Middletown Tp.*, 9 *N. J.* 46 (1952), the court had difficulty in finding a wrong, much less an active wrongdoing. As indicated in the last case, the active wrong in *Kress v. City of Newark*, 8 *N. J.* 562 (1952), *supra*, consisted of the placing of an inexperienced maid in a department of the city hospital under circumstances which gave rise to an unreasonable risk of harm. *Restatement of Torts* § 284. So here the taking of the horse to the parking lot, the tethering of it there, and then the leaving of it for a substantial time constitute positive affirmative acts.

■ This brings us to the final question, namely, whether the wrongdoing here was directed or participated in by the municipality. There is no suggestion in the evidence that the city directed the horse to be left, unattended, in the private parking lot. Was there, then, participation on the city's part? *Kress v. City of Newark*, 8 *N. J.* 562 (1952), *supra*, stands for the proposition that where the city permits the continuance of active wrongdoing after notice thereof, it participates therein. *Cf. Jersey City v. Kiernan*, 50 *N. J. L.* 246 (*Sup. Ct.* 1888), *supra; Murphy v. Atlantic Highlands*, 77 *N. J. L.* 452 (*Sup. Ct.* 1909), *supra.*

■ Did the City have notice, and did it permit a continuance of the situation? Of course a municipality cannot itself be given notice; it can act only through its governing body, officers, agents or servants. *Allen v. City of Millville*, 87 *N. J. L.* 356 (*Sup. Ct.* 1915), affirmed 88 *N. J. L.* 693 (*E. & A.* 1916); *cf. Barnes v. District of Columbia*, 91 *U. S.* 540, 23 *L. Ed.* 440 (1875). The question, then, resolves itself into another one, namely, which person or persons, among those acting on the city's behalf, must have been notified of the wrong, and which of them must have

permitted its continuance? The five commissioners, or the one in charge of public safety? Or the police inspector in that large city, who ranks next below the chief and deputy chief (superintendent or deputy superintendent)? *Cf. Webster's New International Dictionary* (*2nd ed.*). Or an officer further down in the scale of authority?

A mass of cases throughout the country can be marshalled for the general proposition that a municipality has notice of a matter such as this, where notice is given to some officer intrusted with a general authority to remedy the matter. The rule has often been stated in connection with defects in streets or sidewalks. *Central Union Telephone Co. v. City of Conneaut*, 167 *F*. 274 (*C. C. A.* 6 1909); *City of Albany v. Black*, 216 *Ala.* 4, 112 *So.* 433 (*Sup. Ct.* 1926); *Wise v. City of Los Angeles*, 9 *Cal. App.* 2d 364, 49 *P.* 2d 1122 (*Dist. Ct. App.* 1935), rehearing denied 50 *P.* 2d 1079 (1935); *City of Denver v. Deane*, 10 *Colo.* 375, 16 *P.* 30 (*Sup. Ct.* 1887); *Wade v. City of Bridgeport*, 109 *Conn.* 100, 145 *A.* 644 (*Sup. Ct. Err.* 1929); *City of Columbus v. Ogletree*, 102 *Ga.* 293, 29 *S. E.* 749 (*Sup. Ct.* 1897); *City of Joliet v. Looney*, 159 *Ill.* 471, 42 *N. E.* 854 (*Sup. Ct.* 1896); *Lifschitz v. City of Chicago*, 150 *Ill. App.* 201 (1909); *City of Muncie v. Hey*, 164 *Ind.* 570, 74 *N. E.* 250 (*Sup. Ct.* 1905); *City of Hammond v. Jahnke*, 178 *Ind.* 177, 99 *N. E.* 39 (*Sup. Ct.* 1912); *Smith v. City of Des Moines*, 84 *Iowa* 685, 51 *N. W.* 77 (*Sup. Ct.* 1892); *City of Harlan v. Parsons*, 202 *Ky.* 358, 259 *S. W.* 717 (*Ct. App.* 1924); *Blake v. City of Lowell*, 143 *Mass.* 296, 9 *N. E.* 627 (*Sup. Jud. Ct.* 1887); *Delgado v. Town of Billerica*, 323 *Mass.* 483, 82 *N. E.* 2d 591 (*Sup. Jud. Ct.* 1948); *Edwards v. Common Council of Village of Three Rivers*, 96 *Mich.* 625, 55 *N. W.* 1003 (*Sup. Ct.* 1893); *Engel v. City of Minneapolis*, 138 *Minn.* 438, 165 *N. W.* 278, *L. R. A.* 1918 B, 647 (*Sup. Ct.* 1917); *Miller v. Town of Canton*, 112 *Mo. App.* 322, 87 *S. W.* 96 (*Ct. App.* 1905); *Andrews v. City of Butte*, 116 *Mont.* 69, 147 *P.* 2d 1020 (*Sup. Ct.* 1944); *Twogood v. City of New York*, 102 *N. Y.* 216, 6 *N. E.* 275 (*Ct. App.* 1886); *Sprague v. City of Rochester*, 159 *N. Y.* 20, 53

N. E. 697 (*Ct. App.* 1899); *Hunter v. City of Lakewood,* 35 *Ohio App.* 132, 171 *N. E.* 842 (*Ct. App.* 1930); *Pool v. Mayor, etc. of City of Jackson,* 93 *Tenn.* 62, 23 *S. W.* 57 (*Sup. Ct.* 1893); *City of Dallas v. Meyers,* 55 *S. W.* 742 (*Tex. Ct. Civ. App.* 1900); *City of Lynchburg v. Wallace,* 95 *Va.* 640, 29 *S. E.* 675 (*Sup. Ct.* 1898); *Mauch v. City of Hartford,* 112 *Wis.* 40, 87 *N. W.* 816 (*Sup. Ct.* 1901); *Engel v. City of Minneapolis,* 138 *Minn.* 438, 165 *N. W.* 278, *L. R. A.* 1918B, 649; 20 *L. R. A.* (*N. S.*) 701; 63 *C. J. S., Municipal Corporations,* § 833, *p.* 174; *McQuillin, Municipal Corporations* (*3rd ed.*), § 54.106.

Furthermore, a municipality is chargeable with notice of such facts as this officer would have discovered with the exercise of ordinary diligence in the performance of his duties. A mass of authorities can be cited for this proposition too, many of them also having to do with defects in the streets or sidewalks. *District of Columbia v. Woodbury,* 136 *U. S.* 450, 10 *S. Ct.* 990, 34 *L. Ed.* 472 (1889); *Edwards v. City of San Diego,* 126 *Cal. App.* 1, 14 *P. 2d* 119 (*Dist. Ct. App.* 1932); *City Council of Augusta v. Hammock,* 85 *Ga. App.* 554, 69 *S. E. 2d* 834 (*Ct. App.* 1952); *Baker v. Granite City,* 311 *Ill. App.* 586, 37 *N. E. 2d* 372 (*App. Ct.* 1941); *City of Evansville v. Senhenn,* 151 *Ind.* 42, 47 *N. E.* 634, 51 *N. E.* 88, 41 *L. R. A.* 728 (*Sup. Ct.* 1897); *Krska v. Incorporated Town of Pocahontas,* 200 *Iowa* 594, 203 *N. W.* 39 (*Sup. Ct.* 1925); *Delmar v. Venables,* 125 *Md.* 471, 94 *A.* 89 (*Ct. App.* 1915); *Cannon v. City of Worcester,* 225 *Mass.* 270, 114 *N. E.* 306 (*Sup. Jud. Ct.* 1916); *Kelly v. City of Springfield,* 328 *Mass.* 16, 101 *N. E. 2d* 352 (*Sup. Jud. Ct.* 1951); *Killeen v. City of St. Cloud,* 136 *Minn.* 66, 161 *N. W.* 260 (*Sup. Ct.* 1917); *City of Greenville v. Middleton,* 124 *Miss.* 310, 86 *So.* 804 (*Sup. Ct.* 1921); *Peterson v. Kansas City,* 324 *Mo.* 454, 23 *S. W. 2d* 1045 (*Sup. Ct.* 1929); *Kunz v. City of Troy,* 104 *N. Y.* 344, 10 *N. E.* 422 (*Ct. App.* 1887); *Revis v. City of Raleigh,* 150 *N. C.* 348, 63 *S. E.* 1049 (*Sup. Ct.* 1909); *Anderson v. City of Jamestown,* 50 *N. D.* 531, 196 *N. W.* 753 (*Sup. Ct.* 1924); *City of Columbus v. Penrod,* 73 *Ohio*

*St.* 209, 76 *N. E.* 826 (*Sup. Ct.* 1906); *Armstrong v. City of Tulsa,* 102 *Okla.* 49, 226 *P.* 560 (*Sup. Ct.* 1924); *Lawrence v. Scranton City,* 284 *Pa.* 215, 130 *A.* 428 (*Sup. Ct.* 1925); *Fritz v. City of Watertown,* 21 *S. D.* 280, 111 *N. W.* 630 (*Sup. Ct.* 1907); *Colquhon v. City of Hoquiam,* 120 *Wash.* 391, 207 *P.* 664 (*Sup. Ct.* 1922); *Sheel v. City of Appleton,* 49 *Wis.* 125, 5 *N. W.* 27 (*Sup. Ct.* 1880); 63 *C. J. S., Municipal Corporations,* § 943, *p.* 469; 25 *Am. Jur.* 731; *cf. Kress v. City of Newark,* 8 *N. J.* 562 (1952), *supra,* where there was a condition (not merely an isolated act) that had continued so long as to justify the inference that the city had notice of it (63 *C. J. S., Municipal Corporations,* § 943, *p.* 468).

So, if a municipal officer, entrusted with a general authority in the premises, would have, in the exercise of ordinary diligence, discovered active wrongdoing on the part of an employee or inferior officer, the municipality is charged with notice of it. Furthermore, if in such a case he does not take reasonable measures to prevent a continuance of the wrongdoing, then the municipality will have participated in its continuance. *Cf. Kress v. City of Newark, supra.* These are the principles that govern this case.

The New Jersey cases have not dealt with this precise problem as to notice. Nor have they laid it out explicitly that a municipality is liable for the tortious actions of any officer who has (as put in a leading case) "a general authority to act for the City upon the subject." *Thayer v. Boston,* 19 *Pick.* 511, 36 *Mass.* 511 (*Sup. Jud. Ct.* 1837); *cf. Barnes v. District of Columbia,* 91 *U. S.* 540, 23 *L. Ed.* 440 (1875), *supra.* Indeed even in the many New Jersey cases which hold a municipality liable for having actually *directed* certain wrongdoing (distinguish the situation where the municipality *participates in* the same), we find little or nothing said as to who on the part of the municipality gave those directions. Some cases hold a municipality liable for "its" acts, concealing the problem behind the neuter pronoun. However in two cases it has been said that under the doctrine of *respondeat superior,* a municipality is not charge-

able for the torts of "inferior officers having only ministerial duties to perform." *Condict v. Jersey City*, 46 *N. J. L.* 157 (*E. & A.* 1884); *Reilly v. New Brunswick*, 92 *N. J. L.* 547 (*E. & A.* 1919); *cf. U. S. Mortgage Title etc. Co. v. Teaneck Twp.*, 128 *N. J. L.* 114 (*E. & A.* 1942).

In the following cases, the circumstances imply, or the case itself indicates, that the municipality was held for the tortious acts of someone lesser in authority than the governing body: *Newman v. Ocean Township*, 127 *N. J. L.* 287 (*E. & A.* 1914)—the municipal engineer; *Reardon v. Wanaque*, 129 *N. J. L.* 18 (*Sup. Ct.* 1942)—*id; cf. Milstrey v. Hackensack*, 6 *N. J.* 400 (1951), *supra*, speaking of the engineer. See too *Bailey v. Osborn*, 80 *N. J. L.* 333 (*E. & A.* 1910)—refuse was thrown from a gutter, constituting a trespass on plaintiff's land; *Bloom v. Orange*, 91 *N. J. L.* 376 (*Sup. Ct.* 1918)—city used a two-foot piece of pipe temporarily, too narrow for the job, causing a leak in plaintiff's cellar; *Fisher v. Nutley*, 120 *N. J. L.* 290 (*E. & A.* 1938)—"town's agent" put an iron pipe on the grass, from which it apparently rolled into the highway which had been set apart for coasting; *Fredericks v. Dover*, 125 *N. J. L.* 288 (*E. & A.* 1940)—smooth covering for a gutter was put in at a dangerous pitch; *Laub v. Camden*, 126 *N. J. L.* 448 (*Sup. Ct.* 1941)—light was removed from a traffic standard. After a survey of the matter, we think it may properly be held that a municipality is liable for the tortious acts of municipal officers having a general authority in the premises.

So, upon the second branch of the case, we conclude that it was open to the jury here to have found that there was active wrongdoing on the part of Officer Curtiss; that the police inspector had a general authority to remedy the matter; that in the exercise of reasonable diligence at the time notice of the prior accident was given the inspector, he would have discovered (if he did not know it from Curtiss' report or otherwise) this alleged wrongdoing; and, further—having in view the probable inferences to be drawn from the fact that the horse continued subsequently to be parked,

unattended, in the parking lot—it was open to the jury to have found that the inspector took no reasonable measures to prevent a continuance of that situation. If the jury so found, it should have held the city for having participated in the active wrongdoing.

Reversed, and new trial ordered.