## THE DISTRICT OF COLUMBIA

### vs.

## THE WASHINGTON GAS LIGHT COMPANY.

### LAW No. 24,652.

{ Decided December 18, 1884.
{ The CHIEF JUSTICE and Justices MAC ARTHUR and JAMES sitting.

1. Congress has power to adopt a law by reference to it, without embodying the law referred to in the act adopting it, provided the reference be clear, distinct and unmistakable.

2. The joint resolution of Congress of April 24, 1880, adopting and legalizing certain ordinances of the Board of Health of the District of Columbia rendered those ordinances the laws of the District; and the Police Court of the District of Columbia has jurisdiction to impose and enforce the penalties set forth therein.

3. The District of Columbia v. Bates, 1 Mac A., 433, so far as it refers to the powers of Congress and of the Board of Health in respect of nuisances, questioned.

4. An information charging that the defendant "did then and there commit, create and maintain a nuisance injurious to health, consisting of crushing, grinding and burning of shells, whereby noisome stenches and noxious gases arise and are generated," charges a nuisance at common law.

5. When an inferior court is proceeding beyond or without its jurisdiction, the writ of *certiorari* is the proper remedy, but not for mere matters of form and procedure; and it *seems* that the writ ought never to issue where there is a right of appeal, unless the jurisdiction is called in question, or unless some specific reason is shown why the writ should issue, as that a party has lost his right of appeal through mistake or inadvertence or the like.

6. An objection that the information contains the signature of the prosecuting attorney in printed type, instead of the same being written, is one which relates merely to a matter of form and procedure, which is amendable.

### STATEMENT OF THE CASE.

This case was commenced in the Police Court of the District of Columbia, by information filed by the attorney for the District, and charging the defendant with violating an ordinance of the Board of Health against nuisances. Upon application to the Circuit Court of the District of Columbia a *certiorari* was issued, and the case coming up in that court was certified to the General Term to be heard in the first instance.

The information charged the defendant with "creating and maintaining a *nuisance* injurious to health, consisting of crushing, grinding and burning of shells, whereby noisome stenches and noxious gases arise and are generated, which is contrary to and in violation of section 21 of an ordinance of the Board of Health of the District of Columbia," &c.

Instead of a written signature the information had annexed to it the printed name of "A. G. Riddle, attorney for the District of Columbia."

Section 21 of the ordinances of the District of Columbia, legalized by joint resolution of Congress, April 24, 1880, No. 25, is to this effect:

"The crushing, grinding, or burning of bones or shells, or any other business or trade whereby noisome stenches and odors and noxious gases arise or are generated within the cities of Georgetown or Washington, are hereby declared nuisances injurious to health, and after due notice from this board to abate the same, shall, upon conviction thereof, be fined not less than ten nor more than one hundred dollars for every such offence."

And it is further provided in the 27th section:

"That all fines and penalties imposed by any section of this ordinance shall be collected by prosecution in the Police Court or other proper court of the District of Columbia, by information filed in said court, at the instance of the Board of Health."

The questions submitted at the hearing were the validity of the ordinance, and, if valid, whether the Police Court of the District of Columbia has jurisdiction to impose and enforce the penalty set forth.

A. G. Riddle and Francis Miller for the District.

H. R. Webb for the defendant.

Mr. Justice Mac Arthur delivered the opinion of the court.

This was a prosecution commenced by information in the Police Court, to recover a penalty against the defendants

for maintaining a nuisance injurious to health.   It appears
from a statement in the petition that the defendant's plea
to the court's jurisdiction was overruled.   An application
was then made for a writ of *certiorari* to bring the case up
here. .

The main question to be determined is one of jurisdic-
tion, and the writ of certiorari is the appropriate proceeding
to raise that question.   There are questions in this case in
regard to the form of this complaint, but the main question
relates to the jurisdiction of the police court in the first
place, and, in the second, to the validity of the law under
which the proceeding was laid.

It will be remembered that, by the organic act, provision
was made for the appointment of a Board of Health.   They
were authorized to adopt such regulations as were necessary
in regard to nuisances injurious to health.   They devised a
code of ordinances relating to that subject that were quite
exhaustive in their nature, referring to every matter that
could affect the public health.   It will also be remembered
that that board was abolished by the act of June 11, 1878,
and their powers transferred to the Commissioners.   The
validity of these ordinances was passed upon by this court
in the case of the District of Columbia against Bates, which
was a proceeding commenced like this in the police court to
recover a penalty for sustaining a nuisance injurious to
health, 1 Mac A., 433.   A majority of the court came to
the conclusion that Congress could not delegate the power
of making these ordinances to the Board of Health, and
that the board had not the power of defining what should
be nuisances injurious to health.   Probably, in view of that
decision, Congress, on the 24th of April, 1880, passed a
joint resolution adopting and legalizing these ordinances of
the Board of Health by their titles, without incorporating
into the resolution itself the terms in which the ordinances
were expressed.   The first section of that act refers dis-
tinctly to "an ordinance to revise, consolidate and amend
the ordinances of the Board of Health, to declare what shall
be deemed nuisances injurious to health, and to provide for

the removal thereof," and it legalizes that ordinance, and a number of other ordinances are stated by their titles and legalized also, and declared to be the law of the District.

These ordinances have been subjoined by Mr. Richardson to his supplement to the Revised Statutes, on page 574, in a note, and exend through several pages of very fine print. They relate to every conceivable subject, properly so too, relating to the safety, comfort and decency of the city, and if the District is without this law, it has no means of protecting its decency or its comfort, and, indeed, it would become uninhabitable for human beings. The court would not be disposed by judicial decision to abrogate an act of Congress relating so extensively and emphatically to the well-being of the inhabitants of the capital, and we think that we are not compelled to do so.

The objection to the legislation is that it is vague and uncertain, and that the resolution does not embody the law which it seeks to enact, &c. We suppose that it is quite competent for Congress to adopt a law by reference to it, to adopt any provision that has been completed by reference to it, if that reference is clear, distinct and unmistakable, and this we think Congress has done, and if the judges of this court should hold that any vagueness, that any uncertainty or any want of distinctness arises out of this resolution, they would probably be the only three individuals in the United States who would announce such a preposterous proposition with any expectation of receiving credit for sanity. We hold very clearly to the opinion that this resolution is not void for the reason of uncertainty or indistinctness.

In addition to what appears upon the face of the resolution itself, I have already referred to the fact that Mr. Richardson in his supplement has subjoined the ordinances, in full, not only by their titles, but the body and contents are published, and then by a distinct resolution at the same session Congress declares: "The supplement to the Revised Statutes, embracing the statutes, general and permanent in their nature, passed after the Revised Statutes, with refer-

ences, connecting provisions on the same subject, explanatory notes, citations of judicial decisions, and a general index prepared by William A. Richardson, be stereotyped at the government printing office, and the indexes and plates thereof, the right and title therein and thereto shall be in and fully belong to the Government for its exclusive use," &c. And the close of the resolution is in the following language:

"The publication herein authorized shall be taken to be *prima facie* evidence of the laws therein contained in all the courts of the United States."

A discrimination might perhaps be made upon the language which I have just read. It relates to "laws therein contained;" that language would not apply to the notes subjoined, and we are not disposed to say that that is not a fair and just distinction to make. The only reason why we allude to it now, is to show the clearness and the distinctness with which those ordinances are pointed out, and any man that can read fine print can understand what they are.

There was another matter in this connection which may with propriety be alluded to. Referring again to The District of Columbia *vs.* Bates, the doctrine was there announced that the Board of Health could not adopt regulations in the form presented by these ordinances, declaring what should be a nuisance injurious to public health. The authority of that decision is very much shaken by the decision of the Supreme Court of the United States in the case of Barnes *vs.* The District of Columbia. That was an action brought by the plaintiff to recover damages for an injury received by the negligence of the District of Columbia, in leaving an excavation in a street open, into which he fell and from which he received the injuries complained of. The District in that case took the ground that the Board of Public Works had entire control of the public streets, and that they were authorized by the organic act to adopt such regulations as might be necessary for their preservation and repair; that the officers composing the Board of Public Works were appointed by the President, with the

consent of the Senate; that they were paid by the United States, and were therefore a body, a *quasi* corporation as it were, distinct from the general government of the District, and for whose negligence the District was not responsible. This court was convinced that such ought to be the construction of the organic act, and pronounced against the remedy in that case.

The Supreme Court reversed that decision, and held that the Board of Public Works was simply a part of the municipal government, an agency provided for by law for the purpose of carrying out the details of municipal authority and meeting municipal necessities, and that the District was therefore responsible for their conduct or misconduct. Mr. Justice Hunt, who delivered the opinion, refers at large to the various powers which were delegated to the different branches of the municipal government, as, for instance, that it provided for a Board of Health, for a Board of Public Works, a Legislative Assembly, &c., and distributed the various functions of municipal duty among these various agents, but that in point of fact they all constituted the corporation, and so they held that the District was responsible.

Now, if it be true, according to the doctrine of the Supreme Court, that Congress could delegate to the Board of Public Works a right to pass regulations for the control, repair, &c., of the streets, it seems scarcely less logical, and less legal, that they could delegate to the Board of Public Health the power of passing regulations on that subject. It was really of more vital consequence to the community than any other branch of duty which they delegated to these sub-agencies; so that we think we are justified in saying that the case of Barnes *vs.* The District of Columbia, 91 U. S., 540, shakes to a very great extent the authority of this court in The District of Columbia against Bates. If nothing else was wanted, however, to completely set that decision aside in this particular matter, it would be the legislation of Congress to which I have just referred.

Again it was argued, quoting as authority the Bates case, that neither the Board of Health nor Congress could declare

a nuisance injurious to health, and that they could declare nothing a nuisance which was not one at common law. This doctrine, I presume by fair interpretation of that decision, may be deduced from it, but no one will read it calmly now without thinking that our lamented and learned brother Olin rather over-stated the law when he said that such an act was beyond the power of Congress. But whether Congress has that power or not, we know that if they have not power to declare nuisances injurious to health, that they can have very little authority over municipal powers, because the police regulations of a densely inhabited city, its sanitary regulations and necessities, are of such importance that that power must reside somewhere else than in the common law. We think it is a just conclusion that Congress may declare what is a nuisance injurious to health. But whether it can or not, there is no doubt of one thing, that the complaint in this case does describe a nuisance at common law, or what would constitute a nuisance at common law. It declares "that the Washington Gas Light Company, late of the county of Washington aforesaid, on the 21st day of July, in the year of 1883, and on divers other days between said day and the day of the filing of this information in the District aforesaid, and in the city of Washington, near unto, in or upon divers public streets, and also near unto the dwelling houses of divers good citizens of the District of Columbia, to wit, on lot on corner," &c., describing the locality, "did then and there commit, create and maintain a nuisance injurious to health, consisting of crushing, grinding and burning of shells, whereby noisome stenches and noxious gases arise and are generated, which is contrary to and in violation of," &c.

Well, now a condition of things from which arise noxious gases, noisome stenches, &c., what are they but nuisances that the common law would take cognizance of? It appears to us that the argument on all the points against the power of the court to enforce these ordinances must fall.

Then, in regard to the writ of *certiorari*. There is no doubt that where an inferior court is proceeding beyond or

without its jurisdiction, the writ of *certiorari* is the proper remedy, and the court appealed to in such a case for the writ will grant it, and will restrain such inferior court. This, however, will only arise on the question of jurisdiction, and not as to matters of form and procedure. We have, therefore, taken cognizance of this *certiorari* for the purpose of settling the question of jurisdiction.

Another question relating to the jurisdiction, is, granting that this law is valid, can it be enforced in the police court, when it has no jury by which a party can have his rights adjusted? I suppose that question is *stare decisis* with us. The right of trial by jury is secured by an appeal to this court, and that is a substantial compliance with the provision of the Constitution on that subject.

Objections are taken to the complaint that there is no prayer for process, and that it does not allege notice. The 21st section of the ordinances is the one upon which this complaint is founded. It provides for the punishment of whoever shall "continue any such nuisance, and who shall fail, *after due notice* from the board, to abate the same"; and it is declared that there is no allegation of notice in the complaint. It is also objected that the name or signature of the district attorney is printed in roman characters and not in writing. We think that these relate to mere matters of form and procedure, and are amendable. It would be very easy to pray process, and to allege want of notice. We ought not to encourage writs of *certiorari* for mere matters of form, and the courts do not. The old Supreme Court of New York was troubled with applications of this kind, and they finally decided broadly the doctrine that writs of *certiorari* should never issue, where there was a right of appeal, and the party could have a remedy in a superior court, unless the jurisdiction was called in question, or unless some specific reason was shown why the writ should issue, as that a party has lost his right of appeal through mistake or inadvertence, or something of that kind. So we do not think that we ought to pass upon these questions, and simply decide that a writ of

*certiorari* does not lie for such complaints as the objections which have just been mentioned.

Our conclusion upon the whole is, that this writ must be quashed or discharged, and that an order of *procedendo* must be entered in the case to return it to the police court for further proceedings.