(Hamilton County Court of Common Pleas.)

THE STATE OF OHIO upon the Application of and at the Relation of FRANKLIN ALTER, a Taxpayer of Hamilton County, *v.* FREDERICK BADER et al., Commissioners of Hamilton County.—*In Quo Warranto.*

FRANKLIN ALTER, a Taxpayer, on behalf of the City of Cincinnati, *v.* THE CITY OF CINCINNATI and AUGUST HERRMANN et al., the Board of Administration of the City of Cincinnati.—*For Injunction.*

---

The act of April 15, 1891 (88 Ohio L. 815), entitled an act "to authorize the Commissioners of Hamilton county to extend Gilbert avenue in the city of Cincinnati from its present terminus at Court street to Broadway, and to provide a fund therefor," which authorizes powers of eminent domain only upon request of the board of administration of said city, and mandatorily directs said commissioners to borrow money, to issue bonds to the amount of $500,000, and levy taxes on the taxable property of the county, and on their failure, for the county auditor to levy such taxes, sufficient to pay

the interest and create a sinking fund to redeem said bonds, upon the request of the said board of administration, said money shall be paid into the county treasury, and drawn out upon the order of said latter board in the construction of said Gilbert avenue, extended by viaduct, bridge or fill, is a special act conferring corporate powers upon the city of Cincinnati through its board of administration, in violation of sec. 1, art. 13 of the constitution of Ohio, providing *" the general assembly shall pass no special act conferring corporate powers,"* and is therefore unconstitutional and void.

(Decided May, 1895.)

BUCHWALTER, J.

The submission is by way of demurrer to the several petitions, the one in quo warranto, and the other for injunction, and calls in question the act of April 15, 1891, (88 O. L. 815), known as the Gilbert Avenue Viaduct Act, and entitled " an act to authorize the Commissioners of Hamilton county to extend Gilbert avenue, in the city of Cincinnati, from its present terminus at Court street to Broadway." It provides, in section 1, that the board of commissioners may, on the request of the board of administration, acquire the land and easement therefor either by purchase or condemnation. If any part thereof be by purchase, it shall be at a price not exceeding that fixed by the board of administration of said city. And provides, also, the specific route of the improvement. It provides, in section 2, for the means to pay for such extension of Gilbert avenue, and the construction thereof; that the board of commissioners, *shall, on the request of said board of administration duly certified by the chairman and clerk thereof,* from time to time, and as often as said board of administration think necessary, borrow and pay into the county treasury such sums of money as may be stated in said requests, not exceeding $500,000. and, to secure the payment of the principal and interest thereof, said commissioners shall issue bonds of the county therefor, specifying the terms thereof. It provides, in section 3, that said commissioners shall annually levy taxes to pay the interest on said bonds and create a sinking fund necessary to redeem the same at maturity, and, on their failure to do so, the county auditor shall make such levy upon the taxable property of the county. And it provides, in sections 4 and 5, that the money realized thereby (except that paid for the land and easement) shall be expended exclusively by and under the direction of said board of administration in the construction of said avenue, by viaduct, bridge or fill, upon such plans as may be determined by said board of administration, the disbursements to be upon orders signed by the chairman and clerk of said board of administration when drawn, pursuant to a resolution passed at a regular meeting thereof, on which orders the county auditor shall issue his warrants upon the county treasurer to be paid out of said fund.

The act expressly purports to be special, also mandatory, in every essential step taken either by the county commissioners or county auditor, except in acquiring the right of way, which can only be done at the request of the board of administration; not mandatory directly at the will of the legislature, but indirectly at the will of the board of administration. That is, the taxable property of the county outside of the corporate limits of the city, as well as within it, is ordered to be taxed at the will of municipal officers whose general official powers extend only within the corporate limits and against the will of said taxpayers on their representatives, the county commissioners, for an improvement made within the city limits.

Whatever may be said as to the mandatory features of this act in its encroachment upon the constitutional rights of the people of each city or county to determine for themselves what local improvement, for their convenience, shall be made and paid for by them, and as to its invalidity on this ground, may more properly be said by the judges of our Supreme Court

now divided on that subject, than by a *nisi prius* court.   Our present inquiry is, whether the act violates section 1, art. XIII, of the constitution, providing that " *The general assembly shall pass no special act conferring corporate powers.*"

There is no controversy about the act being special.   The only debatable ground is, whether it confers corporate power on the city of Cincinnati.

I am clearly of the opinion that such power is conferred upon the board of administration.   The commissioners are given no power of eminent do main except at the request of said board, and the further authority given said board of administration to fix the maximum price of purchase, to borrow money, to issue bonds, to levy taxes, to make plans and contracts for said construction, to exclusively issue orders on the county auditor and cause the money to be paid thereon out of the public treasury of the county, is corporate power of the highest order, as usually exercised by municipal corporations.

Equally clear is it that the power to indirectly do a thing through the board of commissioners as in this act, is as great, and as fully vested in the board of administration, as if enforced to directly do it.

And it is also very clear (though a proposition involving some controversy) that the conferring of such power on the board of administration is conferring corporate power on the city of Cincinnati.

In *Johns* v. *The City of Cincinnati*, 45 Ohio St. 278, the city was held liable for the negligent act of its board of public works in the construction of Columbia avenue, the funds for which were raised by a tax, levied by its commissioners on the property of the county.   The powers exercised and given by the statute in the execution of the public work were similar to those here vested in that regard, and were held to be conferred on the board as municipal officers, and not as individuals, nor as agents of the state, and therefore that the city was liable for the negligence of its agents.

See *Barnes* v. *The District of Columbia*, 91 U. S. 540, to the same effect as to like liability of corporation for the negligent act of its board of public works in charge of its street construction, not as an independent body acting for itself, nor as individuals, nor as representing the government of the United States, but on behalf of the District of Columbia.   See *Wright* v. *Holbrook*, 52 N. H. 120 ; *Aldrich* v. *Tripp*, 11 R. I. 141.

In *Simpkinson* v. *Board of Public Works*, 13 Bull. 614, Superior Court, General Term, (Judges FORCE, HARMON and PECK), it was held that conferring corporate power on the board of public works of this city was conferring such power on the city of Cininnati.   The corporate power there given was to borrow money to pay deficiencies existing in the general and certain department funds under the acts of the general assembly of March 24, and April 27, 1885, (82 Ohio Laws, 94 and 158).   These were held to be special acts conferring corporate powers on the city of Cincinnati, and, therefore, invalid.

The municipal powers given by the legislature to cities of the first grade of the first class to be exercised by the board of administration are greater than those heretofore given to the board of public works.   An examination of the sections 2205 and 2231, inclusive, section 2 of the act of April 10, 1891, (88 Ohio Laws, 303), the granite pavement act (sec. 2293a, Revised Statutes, *et seq.*), and the various enactments by reference embodied in the foregoing legislation leads to the conclusion that the board of administration is endowed with more legislative and executive power than any other board of officers in the city, including in this statement the board of legislation.   And it may

be truly said, more power than is by general law given to the boards of council in municipalities.

It has been held, without deviation, by our Supreme Court, that conferring corporate power upon the council of a municipality is conferring such power on the municipality. In *State ex rel. of Attorney General* v. *Cincinnati et al.*, 23 Ohio St. 445, it was held that an amendatory act assuming to confer corporate powers on the city council of the city of Cincinnati, in respect to the government of the hospital, requiring that the rules and regulations for the government thereof, adopted by its board of trustees under the law theretofore in force, should be submitted to the city council of Cincinnati for their approval, was special legislation, and conferred corporate power on the city council in its legislative and corporate capacity, and not on its individual members.

In the recent *Montgomery Road case*, 50 Ohio St. 653, it was held, " That clause of the act of February 9, 1893, 90 O L., which assumes to authorize the councils of the villages of Norwood and Pleasant Ridge to nominate and recommend to the commissioners, two free-holders, to act as trustees in making the contemplated improvement, is an attempt to confer upon such municipalities corporate power, and, therefore, in conflict with section 1, article 13, of the constitution."

The *Fern Street Bridge act* conferred directly the power on the county commissioners to borrow the money and issue the bonds, and levy taxes to meet the same, for the construction of the bridge. It is true the plans of construction and expenditure of the money were vested in the board of administration, but there was no limitation of the power of the board of commissioners, dependent upon the request or order of the board of administration, nor were any of the corporate powers of eminent domain, levying taxes, issuing bonds, or borrowing money, vested in the latter board by that act. It would seem the Supreme Court has not found that the power to formulate the plans of the bridge, to superintend its construction and pay the money therefor, were corporate powers, although I have not yet been able to see the authorized opinion of the court on this subject, simply an edited memoranda of the opinion in 32 Bull. 411, and I do not know what consideration the court gave to that special feature of the act.

There is a clear distinction between conferring such powers on cities, villages, etc., and conferring the same on boards and officers not generally empowered to exercise municipal powers, as boards of sinking fund trustees, trustees of the hospital, and on boards of county commissioners, trustees of townships, etc., representatives of separate unincorporate divisions of the state. On these distinctions we may reconcile the several decisions of the state.

*Com'rs* v. *State*, (Montgomery road act), 50 Ohio St. 653; *State* v. *Pugh*, 43 Ohio St. 98; *State* v. *Cincinnati*, 23 Ohio St. 445 ; *State* v. *Cincinnati*, 20 Ohio St. 18; *State* v. *Mitchell*, 31 Ohio St. 607; *State* v. *Davis et al.*, 23 Ohio St. 434 ; *State* v. *Trustees Columbia Township*, 8 Cir. Ct. 691; *Tuesdale* v. *Com'rs*, (Fern street bridge act) 32 Bull. 411; *State* v. *Com'rs*, 35 Ohio St. 458. See functions of board of county commissioners. *Com'rs* v. *Mighels*, 7 Ohio St. 110.

It is quite clear that the act in controversy and every essential part of it does violate section 1, article XIII of the constitution; and therefore as an entirety the bill is invalid.

A judge of a *nisi prius* court may well hesitate to assume to hold as void and set aside a solemn legislative act of the State, which might more fittingly be so determined by our courts of last resort. Yet this court is brought face to face with the question whether it violates this provision of the constitution, and being clearly satisfied that it does, and seeing, also, that the legislators must have thought so, because they sought to in-

directly do a thing, which it is recogniz·d could not directly be done, then it becomes a proper duty of this court to adjudge the act invalid.

I. therefore, overrule the demurrers to the several petitions. And as it is a final submission, the final entries may be accordingly made.

*Theodore Horstman*, for plaintiff.

*F. S. Spiegel*, for the County Commissioners.

*Fred. Hertenstein* and *Drausin Wulsin*, for the City of Cincinnati and the Board of Administration.