EL MUNICIPIO DE MANATÍ, peticionario y apelante, *v.* E. GARRIDO MORALES, Comisionado de Sanidad, y MANUEL V. DOMENECH, Tesorero de Puerto Rico, demandados y apelados.

Núm. 6962.—*Sometido:* Enero 14, 1937. *Resuelto:* Enero 19, 1937.

*Miguel Guerra Mondragón,* abogado del apelante; *Hon. Procurador General B. Fernández García* y *Luis Janer, Subprocurador,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Está envuelta en este caso la constitucionalidad de la Ley núm. 56 para ordenar al Tesorero de Puerto Rico a solicitud del Comisionado de Sanidad, y previo libramiento del Auditor Insular, retenga cierta suma de los fondos ordinarios de los municipios de Puerto Rico, para entregarla a dicho Comisionado de Sanidad, de modo que sea invertida para ayudar a sostener las unidades de salud pública que hubieren sido establecidas, y las que en el futuro se establecieren en los distintos municipios, y para otros fines, aprobada el 13 de mayo de 1934 (Leyes de 1934, pag. 405).

El Municipio de Manatí por medio de su Alcalde J. R. Dávila presentó en la Corte de Distrito de San Juan una demanda de *injunction* contra el Comisionado de Sanidad y el Tesorero de Puerto Rico, Garrido Morales y Domenech, respectivamente, alegando que el primero se disponía a solicitar del segundo que retuviera y el segundo estaba dispuesto a retener de los fondos ordinarios correspondientes al municipio demandante, la suma de mil quinientos dólares, anualmente, para invertirla en ayudar a sostener una Unidad de Salud Pública en el dicho municipio, en la misma forma que se invierten y desembolsan otros fondos pertenecientes al Pueblo de Puerto Rico, alegándose además que tales actos

se intentaban realizar so color de la autoridad conferídales por la indicada Ley núm. 56 de 1934 que no podía otorgarla por ser nula por anticonstitucional.

Y alegándose, por último, daños irreparables, carencia de remedio ordinario rápido y adecuado y grave perjuicio, se solicitó la expedición de un auto de *injunction* permanente contra los demandados ordenándoles que se abstuvieran de retener los indicados fondos, expidiéndose mientras recayera sentencia definitiva, un auto preliminar.

Se expidió una orden para que los demandados mostraran causa a virtud de la cual no debiera librarse el *injunction* solicitado. Comparecieron dichos demandados pidiendo la eliminación de ciertos particulares de la demanda, interponiendo la excepción previa de falta de hechos determinantes de causa de acción y contestando la petición en su fondo. Se oyó en una vista a ambas partes. Estipularon éstas la presentación de alegatos. Archivaron el suyo los demandados. Nada hizo el demandante. Y la corte, el 5 de noviembre de 1934, dictó sentencia declarando sin lugar la petición, sin especial condenación de costas.

Apeló el municipio. En su alegato sostiene que la corte sentenciadora erró "al decidir que la Legislatura de Puerto Rico tuvo facultades para aprobar la Ley núm. 56 de 13 de mayo de 1934."

Argumentándolo invoca el Capítulo 10 del Título 48 del Código de los Estados Unidos, Sección 1471, en la parte que dispone que:

"Las legislaturas de los Territorios de los Estados Unidos ahora existentes o que se organicen en el futuro, no aprobarán leyes locales o especiales en ninguno de los siguientes casos, a saber:

. . . . . . . . . .

"Reglamentando los asuntos de un condado o pueblo.

. . . . . . . . . .

"Sobre la tasación y cobro de contribuciones, para fines territoriales, del condado, pueblo, o caminos.

. . . . . . . . . .

"En todos los demás casos, cuando una ley general puede ser de

aplicación, no se aprobará ley especial alguna en ninguno de los territorios de los Estados Unidos por las legislaturas territoriales de los mismos.''

Si ésas fueran las únicas disposiciones legales a considerar, tendría quizá razón el apelante, pero con posterioridad a esa ley general sobre territorios, el Congreso aprobó las leyes de 1900 y 1917 organizando el de Puerto Rico, confiriendo a su Legislatura la facultad necesaria a nuestro juicio para decretar la ley que dicho apelante impugna.

''La prohibición general en la ley de julio 30, 1886, 24 Stat. 170, prohibiendo a las legislaturas territoriales pasar leyes especiales no se aplica cuando se concede una autorización especial por el Acta Orgánica de un territorio particular'', resolvió la Corte Suprema de los Estados Unidos en *Ponce* v. *Roman Catholic Church*, 210 U. S. 296. Véase también 28 Op. Atty. Gen. 491.

Y la sección 37 del Acta Orgánica de 1917, dice:

''Artículo 37.—La autoridad legislativa estatuída por la presente, se aplicará a todos los asuntos de carácter legislativo que no sean localmente inaplicables, incluyendo la facultad de crear, consolidar y reorganizar los municipios, según fuere necesario, y proveer y derogar leyes y ordenanzas para los mismos; y también la facultad de alterar, reformar, modificar o derogar cualquiera o todas las leyes y ordenanzas, de cualquier clase, actualmente vigentes en Puerto Rico o en cualquier municipio o distrito del mismo, hasta donde dicha alteración, reforma, modificación o derogación fuere compatible con las disposiciones de esta ley.''

La ley impugnada dispone:

''Sección 1.—Por la presente el Tesorero queda autorizado y así mismo se le ordena, para que a solicitud del Comisionado de Sanidad de Puerto Rico, y previo libramiento del Auditor Insular retenga de los fondos ordinarios correspondientes a los municipios de Adjuntas, Aguadilla, Aguas Buenas, Arecibo, Arroyo, Barceloneta, Bayamón, Cabo Rojo, Cayey, Guayama, Guaynabo, Hormigueros, Humacao, Juncos, Manatí, Maricao, Maunabo, Mayagüez, Moca, Naguabo, Patillas, Río Piedras, Salinas, San Germán, San Lorenzo, Santa Isabel, San Sebastián, Toa Baja, Utuado, Yabucoa y Yauco, respectivamente, las

siguientes sumas de dinero: $500, $500, $300, $2,800, $500, $300, $1,860, $1,000, $1,500, $1,000, $300, $300, $1,000, $800, $1,500, $500, $240, $5,000, $250, $500, $300, $5,600, $3,500, $1,500, $300, $3,000, $500, $500, $360, $600, $1,000, todos los años, para ayudar al sostenimiento de las Unidades de Salud Pública que en dichos municipios se han establecido. Retenidas dichas cantidades o cualesquiera de ellas y recibidas las mismas, o puestas éstas a la disposición del Comisionado de Sanidad, éste procederá a invertirlas para ayudar al sostenimiento de dichas Unidades de Salud Pública, en la misma forma en que se inviertan y desembolsen otros fondos pertenecientes a El Pueblo de Puerto Rico. El Departamento de Sanidad cumplirá en todo momento con aquellas condiciones establecidas como previas para el establecimiento de la unidad de salud pública y que se demostrare fueran convenidas entre el Departamento de Sanidad y el respectivo municipio.

"Sección 2.—Las sumas así descontadas para los municipios mencionados en la anterior sección serán utilizadas única y exclusivamente como una contribución del respectivo municipio para el sostenimiento de sus Unidades de Salud Pública, y el Gobierno Insular a través del Departamento de Sanidad continuará contribuyendo para el sostenimiento de dichas Unidades de Salud Pública en la misma forma y con las mismas sumas que hasta el presente lo ha hecho.

"Sección 3.—Cualquier municipio que en el futuro deseare ser incluído en el grupo de municipios con derecho a sostener una Unidad de Salud Pública, en virtud de contribución de sus fondos ordinarios a dicho propósito podrá así declararlo mediante ordenanza al efecto, copia certificada de la cual se enviará al Tesorero y al Auditor de Puerto Rico y dicha ordenanza constituirá una autorización expresa e irrevocable para que dicho Tesorero y Auditor de Puerto Rico procedan a tramitar y verifiquen la retención de la suma con que se comprometieron dichos municipios de sus fondos ordinarios y el Comisionado de Sanidad queda por la presente autorizado a disponer e invertir de dichos fondos en la misma forma y para el mismo objeto que han sido retenidos los fondos de los municipios específicamente reseñados en las anteriores secciones de esta Ley.

"Sección 4.—Recibida la cantidad correspondiente a cada municipio, o puesta ésta a la disposición del Comisionado de Sanidad, éste procederá a invertirla para ayudar al sostenimiento de dichas Unidades de Salud Públicas, en la misma forma en que se inviertan y desembolsan otros fondos pertenecientes a El Pueblo de Puerto Rico."

Las facultades conferidas por el Congreso a la Legislatura de Puerto Rico en relación con los municipios fueron desde un principio tan amplias que la jurisprudencia general sobre la materia ha venido aplicándose para resolver todas las cuestiones suscitadas sobre el particular. En términos generales, la relación que existe en esta Isla entre sus municipios y el territorio, es la misma que la que existe en los diversos Estados de la Unión, entre sus municipios y el estado. Y la Corte Suprema de los Estados Unidos ha resuelto que:

"Un municipio es meramente un departamento del estado, y el estado puede retener, conceder, o retirar los poderes y privilegios que crea prudente. Irrespectivamente de lo grande o lo pequeño que sea su campo de acción, el municipio continúa siendo una criatura del estado, ejerciendo y reteniendo poderes y privilegios sujetos a la voluntad soberana. Véase Barnes v. District of Columbia, 91 U. S. 540, 544, 545." Trenton v. New Jersey, 262 U. S. 182, 187.

Bajo el epígrafe "Control Legislativo sobre la propiedad de las Corporaciones Municipales", resume Ruling Case Law la jurisprudencia establecida sobre la materia en gran número de casos. En parte dice:

"Sobre la propiedad que una corporación municipal ha adquirido en su carácter público o gubernamental, y que dedica a fines públicos o gubernamentales, la facultad de la legislatura es completa en verdad, de tal suerte que la legislatura puede tomar el control de la misma de las manos de los funcionarios de la corporación y entregarla a otros funcionarios bajo una supervisión y dominio más directos del estado, o puede, sin remuneración para el municipio y sin su consentimiento, ordenar, que la corporación dedique tal propiedad a algún otro fin público o la entregue a alguna otra agencia gubernamental, para algún otro fin público; o puede exigir del municipio que gaste sus fondos en la compra y sostenimiento de tales bienes; o puede aprobar cualquier reglamentación para el uso y administración, que crea prudente, en bien público." 19 R.C.L. 759.

Parece propio agregar que si bien la ley impugnada se refiere a determinados municipios, prescribe el procedimiento a seguir por cualquier otro municipio que desee ser

incluído en el grupo con derecho a sostener Unidades de Salud Pública. No se trata, pues, de una ley exclusiva local. Además no debe perderse de vista que la sanidad pública es cuestión que incumbe a la Legislatura y que tal como está redactada la ley ni un solo centavo de los fondos municipales de que se dispone deben gastarse fuera de los límites territoriales del municipio ni para otro propósito que no sea el del sostenimiento de la Unidad de Salud Pública en el propio municipio establecida.

En el caso de *Davorck* v. *Moore,* 105 Mich. 120, citado en 19 R.C.L. 765, se resolvió:

"La conservación de la salud pública es una función pública y gubernamental, y un estatuto que provee la designación de la junta de sanidad de una ciudad por el gobernador del estado y que exige de la ciudad que entregue a tal junta sus hospitales y toda la demás propiedad de su departamento de salud, y que levante los fondos que la junta determine son necesarios para su uso, es constitucional."

*Por virtud de todo lo expuesto, debe declararse el recurso sin lugar y confirmarse la sentencia recurrida.*

Los Jueces Asociados Señores Wolf y Córdova Dávila no intervinieron.