Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| SUPERMERCADOS ECONO, INC.<br><br>Demandante-Apelante<br><br>v.<br><br>CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES; MUNICIPIO DE DORADO<br><br>Demandada-Apelada | KLAN202300365 | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Civil núm.:<br>D AC2018-0083 (502)<br><br>Sobre:<br>Cobro de Dinero, Incumplimiento de Contrato |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rivera Torres y el Juez Salgado Schwarz.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2023.

El Tribunal de Primera Instancia ("TPI"), por la vía sumaria, declaró sin lugar una demanda dirigida a obtener la devolución de un "adelanto" de un arbitrio de construcción entregado a un municipio. Según se explica a continuación, concluimos que erró el TPI, pues (i) la construcción nunca se inició, al haberse descartado el proyecto subyacente, por lo cual la ley aplicable exigía su devolución y (ii) no existe razón jurídica válida para que el municipio pueda apropiarse del referido "adelanto".

I.

En marzo de 2018, Supermercados Econo, Inc. ("Econo"), presentó la acción de referencia, sobre cobro de dinero e incumplimiento de contrato (la "Demanda"), contra el municipio de Dorado (el "Municipio") y el Centro de Recaudaciones de Ingresos Municipales ("CRIM").

Econo alegó que, el 17 de abril de 2015, suscribió un *Acuerdo Final* con el Municipio (el "Contrato"), mediante el cual se acordó que Econo adelantaría al Municipio la suma de $1,000,000.00, como un

pago parcial de arbitrios de construcción que se anticipaba tendrían que pagarse por la construcción proyectada de un centro de distribución y almacenamiento en una finca arrendada por Econo con opción a compra, la cual ubica en Dorado.

Econo alegó que, mientras se planificaba la construcción del proyecto (el "Proyecto"), el 10 de octubre de 2014, el Municipio aprobó la Ordenanza Núm. 14, Serie 2014-2015 (la "Ordenanza Núm. 14"). La misma autorizaba al Alcalde a suscribir decretos contributivos que concedieran incentivos para promover el desarrollo económico a cambio de que las empresas interesadas cumplieran un número de requisitos allí establecidos.

De conformidad con la Ordenanza Núm. 14, el 31 de octubre de 2014, el Municipio aprobó el *Decreto de Exención Contributiva Municipal a Supermercados Econo, Inc.* (el "Decreto"). En específico, el Decreto le ofreció a Econo varias exenciones contributivas sobre la propiedad mueble y una exención de 40% correspondiente al arbitrio de construcción una vez Econo obtuviera el permiso de construcción. Oportunamente, el 19 de noviembre, Econo aceptó el Decreto.

En el Contrato, y en lo pertinente, se acordó que, en caso de que Econo desistiera realizar el Proyecto, **podía solicitar la devolución del adelanto del arbitrio de construcción dentro de un periodo de seis (6) meses a partir del pago del adelanto**. Así las cosas, el 29 de abril de 2015, Econo le entregó al Municipio un cheque por la suma acordada de $1,000,000.00 (el "Adelanto").

Econo sostuvo que, el 23 de octubre de 2015, le cursó una misiva al Municipio en la que informó que no comenzaría la construcción del Proyecto por un término indeterminado debido a que un estudio ambiental reveló que el terreno estaba contaminado. En vista de ello, solicitó la devolución del adelanto del arbitrio de construcción. El Municipio se negó a devolver el Adelanto.

El Municipio contestó la Demanda; aceptó que Econo entregó el Adelanto, pero sostuvo que ello ocurrió "como parte de las obligaciones que contrajo para la concesión del Decreto de Exención". También reconoció que Econo le reclamó oportunamente la devolución del Adelanto. Sostuvo que no procedía la devolución del Adelanto porque Econo, por su falta de "diligencia y competencia", había incumplido con sus "obligaciones para establecer sus almacenes y sus oficinas administrativas en Dorado".

Econo reconvino; alegó que Econo no fue diligente, ni realizó gestiones suficientes y con el asesoramiento competente, antes de concluir que debía cancelar el Proyecto. Exigió el cumplimiento específico de la supuesta obligación de Econo de construir el Proyecto o la resolución de dicha obligación con el resarcimiento de los daños supuestamente sufridos por el Municipio a raíz del abandono del Proyecto.

En diciembre de 2018, Econo interpuso una *Moción en Solicitud de Sentencia Sumaria* (la "Moción de Econo"). Arguyó que siempre mantuvo la prerrogativa de decidir si iniciaba o no el Proyecto y que, al optar por no realizarlo, procedía la devolución del Adelanto.

En abril de 2019, el Municipio se opuso a la Moción de Econo; arguyó que Econo carecía de evidencia para sostener lo que indició era el costo de mitigación de los terrenos que se contemplaban usar para el Proyecto.

Luego de algunos trámites procesales, el 14 de enero de 2020, el TPI emitió una *Resolución* mediante la cual denegó la Moción de Econo.

Por su parte, en febrero de 2022, el Municipio presentó una *Moción de Sentencia Sumaria* (la "Moción del Municipio"). El Municipio arguyó que el Contrato era nulo por un número de insuficiencias del mismo. Específicamente, el Municipio señaló la

falta de autorización por la Legislatura Municipal de los términos del Contrato; la ausencia de una fecha de vigencia cierta o una cláusula de expiración; la omisión de una advertencia en tono a la falta de autoridad legal para hacer un desembolso de dinero sin una correspondiente enmienda que extienda la vigencia del Contrato; la falta de un número de registro y la omisión de remitir copia de este a la Oficina del Contralor de Puerto Rico; la ausencia de cláusulas relacionadas con el deber de Econo de mantener y archivar ciertos récords y documentos durante un periodo no menor de cinco (5) años; la ausencia de una cláusula que advirtiera la potestad del Municipio de retener pagos a Econo por deudas con alguna instrumentalidad gubernamental; la falta de cláusulas que advirtiesen o certificasen la prohibición absoluta de que servidores públicos reciban ganancias, bienes, regalos, beneficios u ostenten intereses pecuniarios relacionados con el Contrato; la omisión de una cláusula que advierta sobre el cumplimiento de Econo con las leyes y reglamentos aplicables y la ausencia de deudas o, en la alternativa, la existencia de planes de pago de contribuciones, deudas municipales, patentes, etc.; y la omisión de una cláusula que le exigiera a Econo presentar certificaciones del Departamento de Hacienda (deuda y presentación de planillas), una certificación del CRIM, certificación de la Administración para el Sustento de Menores (ASUME), copia de patente municipal, póliza del Fondo del Seguro del Estado, copia del certificado del IVU y una declaración jurada sobre no convicción por delitos contra el erario.

Según la teoría del Municipio, por ser el Contrato nulo, podía apropiarse del Adelanto que se entregó al amparo del mismo.

El 1 de marzo de 2022, Econo se opuso a la Moción del Municipio. Arguyó que el Contrato era válido, por no necesitar aprobación de la Legislatura Municipal y que las "deficiencias" que el Municipio señalaba no eran tales porque el Contrato no disponía

para el desembolso por el Municipio de fondos públicos por la compra de mercancía o por la prestación de servicios.

Econo resaltó que, al nunca iniciarse la construcción del Proyecto, el Municipio nunca adquirió el derecho a cobrar algún arbitrio de construcción y, por lo tanto, no tenía derecho a retener el Adelanto. Afirmó, además, que la letra clara del Contrato indica que las partes convinieron que, en caso de no llevarse a cabo la construcción, Econo podía solicitar la devolución del Adelanto en un término de seis (6) meses, y que Econo cumplió con dicho término.

Además, Econo señaló que el Artículo 2.007(e) de la Ley 81-1991 (vigente a la fecha que surge la controversia entre las partes) establecía taxativamente la procedencia del reembolso de la totalidad de un arbitrio de construcción cuando la construcción no se lleve a cabo[1].

Mediante una sentencia notificada el 4 de abril de 2023 (la "Sentencia"), el TPI desestimó la Demanda y declaró con lugar la reconvención instada por el Municipio, aunque dispuso que luego se determinaría sobre los daños reclamados por el Municipio. El TPI concluyó que no había controversia sobre los siguientes hechos:

> 1. Econo identificó una finca propiedad de la Compañía de Fomento Industrial localizada en el Barrio Maguayo del Municipio que cumplía con los requisitos de capacidad y localización para construir un almacén.
>
> 2. El 13 de mayo de 2013, la Compañía de Fomento Industrial le envió una propuesta a Econo para el arrendamiento con opción a compra de una finca de aproximadamente 175 cuerdas localizada en el Municipio.
>
> 3. Econo utilizaría dicha finca para la construcción de un almacén para la distribución de productos a los miembros de su cadena y para llevar a cabo una operación agrícola que interesaba desarrollar.
>
> 4. El 16 de diciembre de 2013, la Compañía de Fomento Industrial y Econo suscribieron un contrato de arrendamiento con opción a compra con relación a la

---

[1] "Cuando un contribuyente haya efectuado el pago del arbitrio aquí dispuesto … sin que se haya, en efecto, comenzado la actividad de construcción, el contribuyente llenará una Solicitud de Reintegro de Arbitrio y éste procederá en su totalidad."

propiedad identificada como Lote Número L-439-0-97, con cabida de 174.795 cuerdas, localizada en el Municipio, para que la parte demandante realizara la construcción del almacén y llevará a cabo la operación agrícola.

5. El 10 de octubre de 2014, el Municipio aprobó la **Ordenanza Núm. 14, Serie 2014-2015**, para establecer un programa de incentivos contributivos municipales a empresas, compañías o industrias a ubicarse en el territorio municipal, adoptar la reglamentación aplicable y para establecer parámetros y penalidades.

6. La Ordenanza Núm. 14, Serie 2014-2015, autorizó al Alcalde del Municipio, Hon. Carlos A. López Rivera, y/o (sic) su representante(s) autorizado(s) "a suscribir acuerdos, **mediante decretos** que propendan a otorgar incentivos contributivos municipales, bajo parámetros de razonabilidad, que propicien el desarrollo económico del Municipio, a los efectos de facilitar la ubicación, traslado y/o (sic) establecimiento de nuevas industrias en el territorio municipal de Dorado, Puerto Rico; dedicadas a la Distribución de Alimentos, Misceláneos y Productos Relacionados a esta industria con un Centro de Distribución y Facilidades Administrativas; establecer los parámetros a seguir que rijan dicho acuerdo; establecer su Vigencia y términos; establecer requisitos de cumplimiento y penalidades pertinentes".

7. La Ordenanza Núm. 14, Serie 2014-2015, estableció en detalle todos los requisitos que se debían exigir a los proponentes para que se le pudiesen conceder los beneficios contributivos allí provistos. Estos beneficios incluían exenciones en el pago de las contribuciones sobre la propiedad mueble e inmueble y descuentos en el arbitrio de construcción, entre otros.

8. El 31 de octubre de 2014, el Alcalde del Municipio y el Secretario de la Legislatura Municipal, Sr. Javier Solano, suscribieron y aprobaron el *Decreto de Exención Contributiva Municipal a Supermercados Econo, Inc.* A través de dicho decreto, el Municipio estableció las condiciones específicas que Econo debía cumplir para gozar de una exención de: (i) 100% de la contribución básica sobre la propiedad mueble por 25 años; (ii) 100% de la contribución básica sobre la propiedad inmueble por 25 años; (iii) exención del 40% del arbitrio de construcción que comenzaría una vez Econo obtuviese el permiso de construcción para sus nuevas facilidades en el Municipio, y (iv) la vigencia del decreto estaría sujeta a que Econo mantuviese un mínimo de 300 empleados a tiempo completo, entre otras condiciones.

9. La determinación de hechos número cuatro (4) del *Decreto de Exención Contributiva Municipal a Supermercados Econo, Inc.* dispone expresamente lo siguiente:

> El Peticionario [Econo] construirá y establecerá en el Municipio de Dorado un Centro de

Distribución (almacenaje y distribución) de sus productos, además de las oficinas administrativas de la empresa. Mudarán sus facilidades dedicadas a estas actividades, que están localizadas actualmente en el Municipio de Carolina, a las nuevas facilidades que construirá el Peticionario [Econo] en el Parque Industrial Maysonet, Dorado, Puerto Rico.

10. En específico, en el *Decreto de Exención contributiva Municipal a Supermercados Econo, Inc.* se estableció los siguiente:

**DECRÉTESE[,] ADEMÁS**, que el Concesionario [Econo] vendrá obligado a radicar dentro de los treinta (30) días a partir de la fecha de notificación del Decreto una carta en la que exprese su aceptación incondicional al Decreto y a todos los términos y condiciones en el mismo, y presentar una resolución corporativa autorizando al oficial a firmar la aceptación del Decreto. Una vez aceptado por el Concesionario, este Decreto se considerará como un contrato entre el Municipio y el Concesionario.

11. El 19 de noviembre de 2014, mediante carta suscrita por el Sr. Heriberto Torres Cortés, Presidente de Econo, estando debidamente autorizado mediante Resolución Corporativa aprobada por la Junta de Directores, notificó al Alcalde su **aceptación y aprobación incondicional al decreto** con todos sus términos y condiciones.

12. El 17 de abril de 2015, las partes suscribieron un documento intitulado ***Acuerdo Final***. Este documento fue firmado por el Sr. Juan Barreto Sosa, como presidente de Econo, por el Hon. Carlos A. López Rivera, como Alcalde del Municipio y por el Sr. Luis R. Sierra Salgado, como Director de Finanzas del Municipio.

13. En el *Acuerdo Final* se estableció que Econo efectuaría un pago de $1,000,000.00 en o antes de 1 de mayo de 2015 y que, el balance restante de $500,000.00 sería pagado por Econo al momento en que la Oficina de Gerencia de Permisos, o la entidad gubernamental a cargo, emitiera la notificación o permiso para dar inicio a la construcción del Centro de Distribución.

14. En el *Acuerdo Final* se estableció, además, que:

No obstante, en caso de que ECONO, dentro del periodo de seis (6) meses contados a partir del pago de $1,000,000.00 al MUNICIPIO, determine que no iniciará la obra de construcción solicitará de inmediato y por escrito al MUNICIPIO la devolución y/o (sic) reintegro de dicho pago según dispone la Ley Núm. 81, *supra*.

15. Al *Acuerdo Final* nunca se le asignó número de registro ni fue registrado en los libros municipales ni en la Oficina del Contralor de Puerto Rico.

16. El *Acuerdo Final* no contiene cláusula alguna que establezca que su vigencia estará sujeta a que este sea debidamente registrado y se envíe copia a la Oficina del Contralor de Puerto Rico.

17. El *Acuerdo Final* no contiene fecha de vigencia cierta ni/o (sic) una cláusula que establezca fecha de expiración aclarando que, pasada la vigencia, no podrán exigirse las prestaciones del contrato a menos que no exista una enmienda extendiendo su vigencia, firmada por ambas partes, debidamente registrada en la Oficina del Contralor de Puerto Rico.

18. El *Acuerdo Final* no contiene una cláusula que establezca que el desembolso de dinero sin una enmienda extendiendo la vigencia del contrato se estaría haciendo sin autoridad legal alguna, constituyendo su actuación una *ultra vires*, que no vincula al Municipio ni a su Alcalde, así como a ningún otro funcionario municipal.

19. El *Acuerdo Final* no posee una cláusula que advierta lo siguiente:

> Econo mantendrá y guardará récords, documentos administrativos, incluyendo facturas, pagos, estados financieros y otros registros que permitan una adecuada identificación y contabilidad de todos los costos relacionados con el contrato, así como cualquier récord que se considere necesario por **EL MUNICIPIO** para llevar una adecuada contabilidad de fondos y el cumplimiento de Órdenes Ejecutivas de la Oficina del Contralor y otras agencias afines. Dichos récords estarán disponibles para propósitos de auditoría a realizarse por **EL MUNICIPIO** o su representante autorizado, el Contralor de Puerto Rico, la Oficina para el Desarrollo Socioeconómico y Comunitario de Puerto Rico (ODSEC), entre otras agencias similares. Los récords y documentos serán retenidos por Econo por un periodo no menor de cinco (5) años a la fecha de terminación del contrato o aceptación, a menos que **EL MUNICIPIO** autorice la destrucción de los mismos antes de la fecha establecida. Esta facultad que tiene la oficina para el Desarrollo Socioeconómico y Comunitario de Puerto Rico (ODSEC), la Oficina del Contralor de Puerto Rico, entre otras agencias similares de acceder, auditar y publicar los documentos contables y fiscales sobre el manejo de los fondos públicos relacionados al presente contrato.

20. El *Acuerdo Final* no posee una cláusula que advierta lo siguiente:

Econo reconoce y consiente a que, en caso de una auditoría, investigación, litigación o cualquier otra acción legítima que envuelva o requiera los registros relacionados al presente contrato es comenzada antes de terminar el período de cinco (5) años, estos registros deben ser retenidos hasta que todos los asuntos que surjan de la acción estén resueltos o hasta el final del período de cinco (5) años, lo que ocurra último.

21. El *Acuerdo Final* no posee una cláusula que advierta lo siguiente:

Queda expresamente acordado mediante este contrato que **EL MUNICIPIO** podrá retener del pago a **Econo** cualquier suma de dinero que ésta adeude a cualesquiera de las instrumentalidades gubernamentales que dispone la Carta Circular Número 1300-13-97 del 11 de abril de 1997 del Departamento de Hacienda, comprometiéndose así **Econo** a cancelar la deuda que corresponda, si alguna.

22. El *Acuerdo Final* no posee una cláusula que advierta lo siguiente:

La solicitud de pago y/o (sic) desembolso de fondo públicos incluirá la siguiente certificación conforme al Boletín Administrativo OE2002-73.
Bajo pena de nulidad absoluta certifico que ningún servidor público del Municipio de Dorado es parte o tiene interés en las ganancias o beneficios producto del contrato objeto de esta factura, y de ser parte o tener interés en las ganancias o beneficios producto del contrato, ha mediado una dispensa previa. La única consideración para suministrar los bienes o servicios objeto del contrato ha sido el pago acordado con el Representante Autorizado del Municipio de Dorado. El importe de esta factura es justo y correcto. Los servicios prestados han sido realizados y no han sido pagados.

23. El *Acuerdo Final* no posee una cláusula que advierta lo siguiente:

Econo certifica y garantiza que al momento de suscribir el presente contrato ha cumplido con las leyes y reglamentos del Estado Libre Asociado de Puerto Rico, cartas circulares y directrices emitidas por las agencias gubernamentales aplicables a la contratación con entidades públicas, entre las cuales se encuentran las siguientes:

a. Haber rendido sus planillas contributivas durante los cinco (5) años previos a este contrato y no adeuda contribuciones al Estado Libre Asociado de Puerto Rico, o se encuentra acogido a un plan de pago con cuyos términos y condiciones está cumpliendo.

b. No tiene deudas con el Centro de Recaudaciones de Ingreso Municipales (CRIM) del Municipio donde están sitos sus propiedades muebles y/o inmuebles sujetos a este tipo de tributación, o se encuentra acogido a un plan de pago con cuyos términos y condiciones está cumpliendo.

c. No tiene deudas con el Gobierno Municipal de Dorado por ningún concepto o se encuentra acogido a un plan de pago con cuyos términos y condiciones está cumpliendo.

d. De aplicar, ha pagado la Patente Municipal conforme al volumen de su negocio, según requerido por la Ley de Patentes Municipales, según enmendada.

e. Ha pagado las correspondientes al Seguro por Desempleo, Seguro por Incapacidad no Ocupacional Temporera, Seguro Social para choferes y otros empleados y la póliza del Fondo del Seguro del Estado, la(s) que aplique(n), si alguna(o), o se encuentra acogido a un plan de pago con cuyos términos y condiciones está cumpliendo.

f. Ha cumplido con la retención de los pagos de pensión alimentaria del salario de sus empleados.

24. El *Acuerdo Final* no posee una cláusula que advierta lo siguiente:

Econo se obliga, además, como condición necesaria a este contrato, a presentar todas aquellas certificaciones, relevos y documentos que acrediten su situación contributiva que les sean requeridas por el **MUNICIPIO** o su representante autorizado. Disponiéndose, que tales certificaciones, relevos y documentos formarán parte del presente contrato.

25. El *Acuerdo Final* no posee una cláusula que advierta y certifique lo siguiente:

Ningún(a) servidor(a) público(a) de **EL MUNICIPIO** tiene interés pecuniario en el presente contrato, compra o transacción de negocios, y tampoco ha tenido en los últimos dos (2) años directa o indirectamente interés económico en las transacciones contenidas en el mismo.

Ningún(a) servidor(a) público(a) de **EL MUNICIPIO** solicitó o aceptó de Econo directa o indirectamente para sí, o para algún miembro de su unidad familiar o para cualquier otra persona, regalos, gratificaciones, favores, servicios, donativos, préstamos o cualquier otra cosa de valor económico.

Ningún(a) servidor(a) público de **EL MUNICIPIO** solicitó o aceptó directa o indirectamente bien alguno de valor económico, vinculados a la presente transacción, de persona alguna de Econo como pago o compensación por realizar los deberes y responsabilidades de su cargo o empleo.

Ningún(a) servidor(a) público(a) de **EL MUNICIPIO** solicitó o aceptó directa o indirectamente para sí, o para algún miembro de su unidad familiar o para cualquier otra persona, negocio o entidad, bien alguno de valor económico, incluyendo regalos, préstamos, promesas, gratificaciones, favores o servicios a cambio de que la actuación de dicho servidor(a) público(a) estuviera influenciada a favor de Econo.

Econo ni sus funcionarios tienen relación de parentesco, dentro cuarto grado de consanguineidad y segundo por afinidad, con ningún servidor(a) público(a) de **EL MUNICIPIO** que tenga facultad para influenciar y participar en las decisiones institucionales de la mencionada entidad.

Ningún miembro de la Legislatura Municipal, funcionario, empleado o agente de **EL MUNICIPIO** que haya ejercido funciones o tenga responsabilidad en la contratación de servicios, planificación, desarrollo e implantación del programa de cualesquiera obras o servicios de **EL MUNICIPIO** podrá tener interés financiero, económico o personal, directo o indirecto en este contrato. Econo tomará las medidas necesarias para que se cumpla con lo dispuesto en esta cláusula.

Que para propósitos del Artículo 4.2(g) de la Ley 1-2012, conocida como la Ley de Ética Gubernamental de Puerto Rico, Econo o sus funcionarios certifica(n) que no es(son) pariente(s) dentro del cuarto grado de consanguineidad o segundo de afinidad de ningún empleado o funcionario de **EL MUNICIPIO**, que tenga poder y/o jerarquía en la toma de decisiones del presente contrato, y de serlo, ha(n) obtenido la dispensa necesaria de la Oficina de Ética Gubernamental (OEG) para esta contratación.

Econo ni sus funcionarios certifica(n) que no recibe(n) paga ni compensación alguna por servicios regulares prestados bajo nombramiento en ningún departamento, dependencia, corporación, pública, agencia o municipio del Estado Libre Asociado de Puerto Rico. Certifica(n), además, que de conformidad con lo dispuesto en el Artículo 4.3(c) de la Ley 1-2012, supra, según enmendada, no ha(n) fungido como

servidor(es) público(s) durante los dos (2) años previos a la otorgación del presente contrato.

Econo certifica que no emplea y no va a emplear a empleado público alguno, ni que usará los servicios de ningún funcionario público regular durante o después de horas de trabajo con relación a las obligaciones del presente contrato.

26. El *Acuerdo Final* no posee una cláusula que advierta lo siguiente:

A modo de obligación para la validez de este contrato Econo someterá a **EL MUNICIPIO** los siguientes documentos:
Certificación de Deuda del Departamento de Hacienda
Certificación de Radicación de Planillas del Departamento de Hacienda
Certificación de ASUME
Certificación del CRIM (Por Todos Los Conceptos)
Copia del Certificado del IVU
    Póliza del Fondo del Seguro del Estado
    Copia Patente Municipal
Declaración Jurada sobre no convicción de delitos contra el erario público (sic) Ley #2 de 4 de enero de 2018)

27. El 27 de abril de 2015, Econo giró el cheque número 300079 a favor del Municipio por la suma de $1,000,000.00.

28. El referido cheque fue entregado al Municipio el 29 de abril de 2015 como un adelanto al arbitrio de construcción de conformidad con las condiciones convenidas en el *Acuerdo Final* suscrito entre las partes.

29. En septiembre de 2015, Econo encomendó a la compañía ERTEC PSC realizar un estudio ambiental Fase Dos (II) respecto al terreno ubicado en el Parque Industrial Higuillar que fuera arrendado a Econo para realizar la construcción y desarrollar la operación agrícola.

30. El 26 de octubre de 2015, el Lcdo. Muñoz, representante legal de Econo, remitió una comunicación al Alcalde mediante la cual solicitó la devolución de la suma de $1,000,000.00 entregada como adelanto al pago del arbitrio de construcción. En dicha comunicación, se adujo que habían "surgido unas interrogantes respecto a la presencia en un relleno en la propiedad de material contaminante, requiriéndose por tanto la realización de un Estudio Ambiental Fase II. Dependiendo del resultado de dicho estudio, podría ocasionar que no se comience la construcción del proyecto contemplado por Econo en esos terrenos por un tiempo indeterminado".

31. El 11 de diciembre de 2015, el Sr. Alexis Ramos, Director de la Oficina de Ordenación Territorial y Planificación del Municipio, envió un correo electrónico

al Lcdo. Muñoz a los efectos de sugerirle unos terrenos a Econo para que los considerara como opciones donde también podría construir su centro de distribución.

32. El 12 de enero de 2016, Econo cursó una carta al Lcdo. Luis E. Ortiz, Subdirector Ejecutivo de la Compañía de Fomento Industrial informándole sobre la situación ambiental en el terreno según el estudio ambiental Fase II. En específico, Econo manifestó que entendía que los gastos en los que había que incurrir para remediar los problemas en la propiedad debía ser sufragados por la Compañía de Fomento Industrial y sugirió que el costo de remediación fuese cubierto de los fondos de la compraventa de la propiedad.

33. El 30 de mayo de 2017, el Lcdo. Muñoz, representante legal de Econo, dirigió una carta al Alcalde requiriéndole la devolución de la suma de $1,000,000.00 adelantada al Municipio. Dicha carta fue recibida al día siguiente.

34. El 5 de diciembre de 2018, la Legislatura Municipal de Dorado expidió una *Certificación* en la que hizo constar que el documento intitulado *Acuerdo Final* "no fue firmado ni autorizado por la Legislatura Municipal de Dorado en ninguna de sus sesiones legislativas". (Énfasis en el original).

El TPI razonó que el Contrato era nulo porque la Legislatura Municipal no lo autorizó y porque no contenía las cláusulas que ordinariamente se requieren para un contrato municipal. Por otro lado, el TPI estimó que, aun bajo la premisa de que el Contrato fuese válido, Econo no habría solicitado la devolución del Adelanto, dentro del término contemplado, de una forma suficientemente categórica. El TPI también razonó que Econo no había cumplido con los términos del Decreto, por lo cual declaró con lugar la reconvención, dejando pendiente la celebración de una vista de daños al respecto.

Inconforme, el 27 de abril, Econo presentó el recurso que nos ocupa; formula los siguientes señalamientos de error:

(a) Primer Error:
Erró el Tribunal de Primera Instancia al concluir que el Acuerdo Final es nulo.

(b) Segundo Error:
Erró el Tribunal de Primera Instancia al resolver que el Lcdo. Rogelio Muñoz, no cumplió con lo dispuesto en el Acuerdo Final al solicitar la devolución de dinero.

(c) Tercer Error:

> Erró el Tribunal de Primera Instancia al resolver que el Decreto de Exención Contributiva Municipal a Supermercados Econo, Inc., aceptado por ECONO, obligó a Econo con el Municipio de Dorado a construir y establecer un centro de distribución de sus productos, así como sus oficinas administrativas.

El 6 de junio, el Municipio presentó su alegato en oposición. Resolvemos.

II.

El Artículo 1206 del Código Civil de 1930, 31 LPRA sec. 3371,[2] establecía que "[e]l contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio." *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 886 (2008). Las partes contratantes pueden establecer los pactos, las cláusulas y las condiciones que tengan por convenientes, siempre que no sean contrarias a la ley, a la moral y al orden público. Artículo 1207 del Código Civil de 1930, 31 LPRA sec. 3372; *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 173 (2011); *Guadalupe Solís v. González Durieux*, 172 DPR 676, 683 (2007); *Álvarez v. Rivera*, 165 DPR 1, 17 (2005). Por ende, los tribunales no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato cuando este es legal y válido y no contiene vicio alguno. *De Jesús González v. A.C.*, 148 DPR 255, 271 (1999).

Un contrato adviene a la vida jurídica cuando concurren los siguientes elementos: (1) consentimiento de los contratantes, (2) objeto cierto que sea material del contrato y (3) causa de la obligación que se establezca. Artículo 1213 del Código Civil de 1930, 31 LPRA sec. 3391.

Ahora bien, en cuanto a contratos con entidades públicas, es necesario, para que el contrato sea válido, que se cumplan además con las disposiciones especiales de las leyes que reglamentan este asunto. *Alco Corp. v. Mun. de Toa Alta*, 183 DPR 530, 536-537

---

[2] Haremos referencia al Código Civil vigente a la fecha de los hechos del caso.

(2011); *Quest Diagnostics v. Mun. San Juan*, 175 DPR 994, 1000 (2009); véanse, además, *Landfill Technologies v. Mun. de Lares*, 187 DPR 794, 801 (2013); *Johnson & Johnson v. Mun. de San Juan*, 172 DPR 840, 854-855 (2007), *Cordero Vélez v. Mun. de Guánica*, 170 DPR 237, 245-252 (2007).

Por otro lado, es un axioma básico de nuestro ordenamiento que un contrato es nulo cuando le "falta … algún elemento esencial o porque contraviene un precepto legal...". Puig Brutau, *Fundamentos de Derecho Civil*, Tomo II, Vol. I, 3era ed., Barcelona, Bosch, 1988, pág. 286.   La nulidad absoluta o radical puede producirse en tres escenarios, a saber: cuando se ha infringido alguna norma imperativa; cuando al contrato le falta alguno de los elementos constitutivos; o cuando el contrato no se ajusta a las formalidades exigidas cuando éstas tienen un carácter esencial. José Puig Brutau, *op. cit.*, pág. 287.  Cuando un contrato es nulo, el mismo "es inexistente en Derecho desde el momento mismo en que se otorga y, por lo tanto, nunca genera consecuencias de ley." *Pérez Mercado v. Martínez Rondón*, 130 DPR 134, 150 (1992).

Claro está, hay que distinguir entre el contrato nulo, de aquel meramente anulable.  El contrato anulable es eficaz inicialmente, pero puede ser impugnado y dejado sin efecto. José Puig Brutau, *op cit.*, pág. 287.  Además, contrario al contrato anulable, el contrato nulo no puede ser convalidado.  José Ramón Vélez Torres, *Curso de Derecho Civil: Derecho de Contratos*, Tomo IV, Vol. II, 1ra ed., San Juan, 1990, pág. 125.

**Resaltamos que el efecto que la nulidad de un contrato es que los contratantes deben restituirse recíprocamente las cosas que fueron objeto del contrato, con sus frutos, y el precio con los intereses**. Artículo 1255 del Código Civil de 1930, 31 LPRA sec. 3514.   Por consiguiente, decretada la nulidad del contrato, las partes quedan condenadas a la restauración del estado primitivo

anterior de las cosas, mediante la restitución de las prestaciones, salvo cuando la nulidad se deba a causa torpe o ilícita, en cuyo caso debe apreciarse el grado de culpa envuelto de la parte que reclama la devolución. Artículo 1255 del Código Civil de 1930, *supra*; *Bosques v. Echevarría*, 162 D.P.R. 830, 836-837 (2004).

III.

De otra parte, en Puerto Rico, los municipios ejercen únicamente los poderes y privilegios que le son concedidos en virtud de ley. *Municipio de Manatí v. Garrido, Comisionado*, 50 DPR 827, 832 (1937), *Gobierno de La Capital v. Consejo Ejecutivo de P.R.*, 63 DPR 434, 437 (1944). Al ser criaturas de la Asamblea Legislativa, los municipios no poseen "un poder inherente, independiente del Estado, para imponer contribuciones". *Levy, Hijo v. Municipio de Manatí*, 151 DPR 292, 299 (2000).

No obstante, la Ley 81-1991, 21 LPRA secs. 4001 *et. seq.* (vigente a la fecha de los hechos de este caso), le reconocía a los municipios, entre otras facultades, deberes y potestades, la de imponer ciertas contribuciones a personas y entidades sobre ciertas actividades llevadas a cabo dentro de sus límites territoriales. *HBA Contractors v. Mun. de Ceiba*, 166 DPR 443, 454 (2005); *Muñiz Burgos, Inc. v. Mun. Yauco*, 187 DPR 665, 675 (2013); *Mun. San Juan v. Banco Gub. Fomento*, 140 DPR 873, 885 (1996); véase, además, Artículo 2.002 de la Ley 81-1991, 21 LPRA sec. 4052.

En particular, entre las diversas contribuciones que puede recaudar un Municipio, se encuentra el "arbitrio de construcción". En torno a este arbitrio, el inciso (d) del Art. 2.002 de la Ley 81-1991, 21 LPRA sec. 4052(d), establece lo siguiente:

> Toda obra de construcción dentro de los límites territoriales de un municipio, realizada por una persona natural o jurídica privada, o que sea llevada a cabo por una persona natural o jurídica privada a favor o en representación de, o por contrato o subcontrato suscrito con una agencia o instrumentalidad del Gobierno Central o Municipal o del gobierno federal,

incluyendo aquella obra que no requiera la solicitud o expedición de un permiso por la Oficina de Gerencia de Permisos o por un municipio autónomo, deberá pagar arbitrio de construcción correspondiente, previo al comienzo de dicha obra.

A su vez, el Artículo 1.003(cc) de la propia Ley 81-1991, 21 LPRA sec. 4001(cc), definía este arbitrio como sigue:

Significará aquella contribución impuesta por los municipios a través de una ordenanza municipal aprobada con dos terceras (2/3) partes para ese fin, la cual recae sobre el derecho de llevar a cabo una actividad de construcción y/o una obra de construcción dentro de los límites territoriales del municipio. Esta contribución se considerará un acto separado y distinto a un objeto o actividad o cualquier renglón del objeto o actividad, que no priva o limita la facultad de los municipios para imponer contribuciones, arbitrios, impuestos, licencias, derechos, tasas y tarifas. La imposición de un arbitrio de construcción por un municipio constituirá también un acto separado y distinto a [cualquier] imposición contributiva que imponga el Estado, por lo cual ambas acciones impositivas serán compatibles.

Por su parte, el Articulo 1.003(dd) de la Ley 81-1991, 21 LPRA sec. 4001(dd), definía "actividad de construcción" del modo siguiente:

Significará el acto o actividad de construir, reconstruir, ampliar, reparar, demoler, remover, trasladar o relocalizar cualquier edificación, obra, estructura, casa o construcción de similar naturaleza fija y permanente, pública o privada, realizada entre los límites territoriales de un municipio, y para la cual se requiera o no un permiso de construcción expedido por la Oficina de Gerencia de Permisos o por un municipio autónomo que posea tal autoridad. Significará, además, la pavimentación o repavimentación, construcción o reconstrucción de estacionamientos, puentes, calles, caminos, carreteras, aceras y encintados, tanto en propiedad pública como privada dentro de los límites territoriales de un municipio, y en las cuales ocurra [cualquier movimiento de tierra o en las cuales se incorpore] cualquier material compactable, agregado o bituminoso que cree o permita la construcción de una superficie uniforme para el tránsito peatonal o vehicular. Incluye cualquier obra de excavación para instalación de tubería de cualquier tipo o cablería de cualquier naturaleza y que suponga la apertura de huecos o zanjas por donde discurrirán las tuberías o cablerías dentro de los límites territoriales de un municipio.

Además de reconocer la facultad de los municipios de imponer y cobrar arbitrios de construcción, **la Ley 81-1991 exige la devolución del arbitrio de construcción cuando no se construye**. En efecto, el inciso (e) del Artículo 2.007 de la Ley 81-1991, 21 LPRA sec. 4057(e), sobre Reembolso o Pago de Deficiencia, dispone, en lo pertinente, como sigue:

[...]

**Cuando un contribuyente haya efectuado el pago del arbitrio aquí dispuesto y con posterioridad a esta fecha, el dueño de la obra de construcción de aquélla (sic), sin que se haya, en efecto, comenzando la actividad de construcción, el contribuyente llenará una Solicitud de Reintegro del Arbitrio y éste procederá en su totalidad.** Si la obra hubiere comenzado y hubiere ocurrido cualquier actividad de construcción, el reintegro se limitará al cincuenta por ciento (50%). El reintegro se efectuará dentro de los treinta (30) días siguientes a la fecha en que se presente con el Director de Finanzas la solicitud de reintegro. No habrá lugar para solicitar reintegro de suma alguna luego de transcurridos seis (6) meses después de la fecha en que se expidió el recibo de pago del arbitrio determinado para una obra en particular. (Énfasis nuestro).

[...]

IV.

A la luz de los propios hechos que el TPI determinó no estaban controvertidos, erró dicho foro, como cuestión de derecho, al concluir que no procedía la reclamación de Econo. Para llegar a esta conclusión, no es necesario resolver si el Contrato es nulo, pues, irrespectivamente de ello, el Municipio tiene la obligación de devolver el Adelanto a Econo. Veamos.

Por un lado, si partimos de la premisa de que el Contrato es válido, procedía ordenar al Municipio devolver el Adelanto. En efecto, el Contrato contiene una cláusula que obliga al Municipio a devolver el Adelanto si, durante el término de seis (6) meses desde que se entregó el mismo, Econo solicitaba por escrito su devolución porque no construiría el Proyecto. Precisamente esto fue lo que ocurrió aquí. Econo entregó el Adelanto el 29 de abril de 2015 y,

menos de seis meses después, el 23 de octubre de 2015, Econo solicitó la devolución del Adelanto por escrito, pues no procedería con el Proyecto. Ello surge de forma clara de una lectura de la **totalidad** de la carta al respecto. Tan es así que, a raíz de dicha comunicación, el Municipio le ofreció a Econo otros lugares para realizar el Proyecto.

Por otro lado, si partimos de la premisa de que el Contrato es nulo, también procedía ordenar que el Municipio devolviera el Adelanto a Econo. Adviértase que, cuando un contrato es nulo, lo procedente es la devolución recíproca de las prestaciones, cuando ello sea viable. Artículo 1255 del Código Civil de 1930, *supra.*

Más aún, e independientemente de cualquier consideración relacionada con la validez o nulidad del Contrato, la realidad es que la ley aplicable explícitamente obliga al Municipio a devolver el Adelanto. Adviértase que, según reseñado, la Ley 81-1991 le imponía inequívocamente la obligación al Municipio de devolver lo desembolsado por concepto de un arbitrio de construcción cuando, como es la situación de autos, resulta inexistente la construcción, porque esta ni siquiera se inició.

El reconocimiento de la obligación del Municipio de devolver el Adelanto es también compatible con el Artículo 9(a) de la Ley Núm. 230 de 23 de julio de 1974, según enmendada, conocida como Ley de Contabilidad del Gobierno de Puerto Rico, 3 LPRA sec. 283(h)(a), la cual exige que los **desembolsos de fondos públicos** se realicen únicamente para el pago de materiales, equipos, reclamaciones u **otros conceptos que estén autorizados por ley**.

En este caso, el Artículo 2.007(e) de la Ley 81-1991 establece taxativamente que los Municipios tienen **la obligación de reembolsar los arbitrios de construcción cuando la construcción no se lleva a cabo**. Por lo tanto, contrario a la conclusión del TPI, el Municipio está autorizado por ley y tiene la obligación de devolver

el Adelanto.  Como el derecho de Econo a reclamar la devolución del Adelanto surge de una fuente independiente del Contrato (en este caso, la ley), la presente situación es distinguible de aquella en que una parte privada pretende beneficiarse de algún derecho que únicamente le confiere un contrato nulo.

Concluimos, además, que erró el TPI al concluir que procedía la reconvención instada por el Municipio[3].  Contrario a lo razonado por el TPI, Econo no se obligó con el Municipio a realizar el Proyecto.  La única interpretación razonable del Decreto es que, si Econo cumplía con un número de condiciones, tendría derecho a ciertos beneficios estipulados en el Decreto.  No hay controversia sobre el hecho de que, al no haber Econo cumplido con las condiciones del Decreto, no tendrá derecho a beneficio alguno bajo el mismo.  Ello no significa, no obstante, que el Decreto le conceda al Municipio el derecho de exigir el cumplimiento por Econo con las condiciones del Decreto.  Nada en el Decreto pretendió privar a Econo de su libertad gerencial de determinar cómo conducir sus negocios.  Mucho menos se puede concluir que el Decreto le conceda derecho al Municipio de reclamar "daños" por el "incumplimiento" de Econo en cuanto a la realización del Proyecto según una vez previsto y contemplado en el Decreto.

## V.

En atención a los fundamentos que anteceden, se revoca la *Sentencia Sumaria Parcial* apelada. En la continuación del caso, el Tribunal de Primera Instancia deberá dictar sentencia mediante la cual se declare con lugar la reclamación de la parte demandante

---

[3] Somos conscientes de que esa determinación (en torno a la reconvención) no constituye un dictamen final y apelable, pues quedó pendiente de adjudicación la reclamación de daños como consecuencia del supuesto incumplimiento contractual de Econo.  No obstante, lo planteado por Econo al respecto puede acogerse como una solicitud de expedición del auto de *certiorari*.  Hemos determinado expedir el referido auto, pues la resolución de este asunto en esta etapa es compatible con la economía procesal, particularmente dada la naturaleza dispositiva del asunto planteado y el tracto prolongado del caso de referencia. Véase *800 Ponce de León Corp. v. Am. Intl. Ins. Co. of P.R.*, 205 DPR 163, 186 (2020).

contra el Municipio de Dorado y, así, deberá ordenar al Municipio de Dorado que devuelva a la parte demandante $1,000,000.00 más intereses legales. De ser necesario, para la ejecución de la sentencia, el Tribunal de Primera Instancia podrá ordenar al CRIM que remita a la parte demandante determinadas remesas que de otra forma irían al Municipio de Dorado. Además, en la referida sentencia, se deberá declarar sin lugar la reconvención instada por el Municipio de Dorado. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí resuelto y dispuesto.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Rivera Torres emite voto particular de conformidad con la siguiente expresión:

**"VOTO PARTICULAR DE CONFORMIDAD DEL JUEZ RIVERA TORRES**

Coincido totalmente con la determinación arribada por la mayoría del Panel. Solo me resta añadir que para que procediera el cobro del arbitrio por el Municipio, se hacía indispensable que existiera una obra de construcción y más aún, que hubiese un contrato suscrito entre partes privadas que evidenciaran el proyecto. Es decir, no procedía el cobro de un arbitrio de esta naturaleza, aunque fuera un adelanto, sobre un valor especulativo e incierto debido a que el ordenamiento municipal regente exige que el arbitrio se determine y cobre sobre el precio total establecido en el contrato. Lo que, a su vez, será revisado por el Director de Finanzas en los documentos que presente el contribuyente. Por tanto, la cláusula del *Acuerdo Final* que dispuso la entrega por Econo del adelanto de $1,000,000 carece de validez jurídica y el dinero tiene que ser devuelto por el Municipio."

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones